**KENLIN INDUSTRIES, INCORPORATED, Plaintiff–Appellee,**

v.

**UNITED STATES of America, Defendant–Appellant.**

No. 89–1576.

United States Court of Appeals, Fourth Circuit.

Argued July 16, 1990.

Decided March 8, 1991.

Linda E. Mosakowski, argued (Shirley D. Peterson, Asst. Atty. Gen. Gary R. Allen, Gilbert S. Rothenberg, on brief), Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant-appellant.

Charles Ernst Pazar, argued, Stephenson, Kellogg, Krebs & Moran, Fairfax, Va. (Henry E. Hudson, U.S. Atty., Alexandria, Va., on brief), for plaintiff-appellee.

Before RUSSELL, WIDENER, and HALL, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

This suit began on January 26, 1989, as one by Kenlin Industries, Inc. (the "taxpayer") against the Government to recover taxes paid for the tax years 1983, 1984, and 1985. It was alleged that the corporation R & D Urethanes, Inc. ("R & D") transferred in August 1982 its operating assets and business to the taxpayer effecting a reorganization qualifying for tax treatment under 26 U.S.C. § 368, and that the taxpayer

---

**11.** *Amax Coal Co. v. Burns,* 855 F.2d 499 (7th Cir.1988); *Director, OWCP v. Congleton,* 743     F.2d 428 (6th Cir.1984).

was entitled to use the losses of its predecessor company against its own tax liabilities in subsequent tax years under the terms of Section 368. The Government, in answer, pleaded lack of jurisdiction in connection with the refund for the years 1983 and 1985, asserting that the taxpayer paid no taxes for the tax year 1983 and had not fully paid its tax liability for the tax year 1985. It conceded jurisdiction of the action for recovery of taxes for the tax year 1984, but denied liability for various reasons. The Government deposed Kenneth Welk, who, with his wife, owned approximately 95 percent of both corporations and who had engineered the transfer from R & D to the taxpayer, on the terms and substance of the transfer. As a result of this examination of Welk and another officer of the two corporations, the Government decided to concede liability for the 1984 refund and so advised taxpayer's counsel by letter dated July 17, 1989. The taxpayer agreed to the dismissal of its claims relating to the 1983 and 1985 tax years. At this point, the parties agreed on an order dismissing the action, and the district court signed such order on July 19, 1989. The taxpayer thereupon filed a motion for attorney's fees and costs, contending that it was the prevailing party in the refund suit and that the Government had no reasonable or justified defense to the suit. The Government defended against the motion, arguing, among other reasons, that the taxpayer had failed to exhaust administrative remedies available to it under Internal Revenue Service procedures before filing suit and therefore was precluded from recovery of attorney's fees or costs. Without noticing or ruling on the Government's claim of failure to exhaust, the district court granted the taxpayer's motion and awarded costs and attorney's fees in favor of the taxpayer. The Government has appealed on, among other grounds, the failure of the taxpayer to exhaust administrative remedies. We reverse and remand the action to the district court for the entry of an order of dismissal for failure of the taxpayer to exhaust.

## I.

The taxpayer is a corporation formed by Kenneth Welk in August 1982. Welk, who, with his wife, owned 95 percent of the stock of the new company, also was the owner, with his wife, of 95 percent of the stock of R & D Urethanes, Inc., which for some years had manufactured bomb carts for the United States Navy, gun plugs for NATO, and certain plastic specialty products. A short time before the taxpayer's incorporation, a grand jury instituted an investigation of the operations of R & D. Pursuant to a subpoena issued in the course of that grand jury investigation, the FBI seized the records of R & D. The investigation focused on R & D's bomb cart operations under contract with the United States Navy. Shortly after the FBI seized such records, Welk formed the corporation Kenlin Industries, Inc., with substantially the same stockholders as R & D. The plastic and gun plug businesses of R & D, neither of which was concerned with the grand jury investigation, were transferred with all their assets to the new corporation, and the taxpayer promptly began manufacturing specialty plastics and gun plugs. However, Kenneth Welk and R & D were indicted in the fall of 1985 in the United States District Court for the Eastern District of Virginia on multiple felony counts. Prior to trial, the charges against R & D were dismissed. Mr. Welk was convicted of multiple felony counts relating to improprieties stemming from the bomb cart contract.

R & D did not file a tax return for the year ending March 31, 1982, until June 16, 1986, several years after it had ceased to do business. On that return, R & D claimed losses of $1.3 million. Three days earlier, the taxpayer had filed claims for tax refunds for the tax years ending April 30, 1983, April 30, 1984, and April 30, 1985. The petition of the taxpayer based the refund claims on the losses reported on R & D's 1982 tax return.[1] The taxpayer asserted that the transfer of assets from R & D to the taxpayer in August 1982 satisfied

---

1. At one point their losses were said to be approximately $1,300,000, but plaintiff's first request for admissions states that the losses were "at least equal to $386,661."

the requirements of a reorganization as provided in Section 368(a)(1)(D) of the Internal Revenue Code of 1954, entitling the taxpayer to avail itself of the losses shown on R & D's tax return for the year ending April 30, 1982, against its own tax liabilities for the tax years 1983, 1984, and 1985.[2] Some disagreement developed between counsel for the taxpayer and Internal Revenue Service Agent Bamber over the propriety of the reorganization in the absence of any formal written plan of reorganization. The taxpayer's counsel submitted a list of cases, two of which were from the Fourth Circuit,[3] holding, as he contended, that a formal written plan of reorganization was not essential to a valid plan of reorganization under Section 368(a)(1)(D).

On January 6, 1989, Agent Bamber advised the taxpayer by letter, attaching Form 4549, that its claim for a refund of $16,320.06 for the year ending April 30, 1985, had been disallowed for failure to meet the reorganization requirements of Internal Revenue Code Section 368, "because there was no written plan *and the corporate conduct did not approximate a reorganization.*" Prior to this statement, the letter said:

> If you have any questions, please call me immediately. Otherwise, please sign and return both forms to me by January 18, 1989. If this date is not possible, please call me immediately to discuss the situation; otherwise, I will close the case unagreed on January 18, 1989.

The letter indicated just below this explanation the following:

> Consent to Assessment and Collection—I do not wish to exercise my appeal rights with the Internal Revenue Service or to contest in the United States Tax Court the findings in this report. Therefore, I give my consent to the immediate assessment and collection of any increase in tax and penalties, and accept any decrease in tax and penalties shown above, plus any

**2.** The purpose of Section 368 was well stated in *King Enterprises, Inc. v. United States,* 418 F.2d 511, 515, 189 Ct.Cl. 466 (1969):

> Congressional policy [as reflected in 26 U.S.C. § 368] is to free from tax consequences those corporate reorganizations involving a continuity of business enterprise under modified corporate form and a continuity of interest on the part of the owners before and after, where there is no basic change in relationships and not a sufficient "cashing in" of proprietary interests to justify contemporaneous taxation.
> . . . .
> [T]he tax consequences of business transactions are properly determined by their substance and not by the form in which they are cast.

**3.** *Helvering v. Edison Securities Corp.,* 78 F.2d 85, 90 (4th Cir.1935):

> We are in accord with the Board's interpretation of the statute [now Section 368], that a mere plan to reorganize is not enough and there must be an actual reorganization to bring a transaction within its terms.

*Helvering v. Elkhorn Coal Co.,* 95 F.2d 732, 735 (4th Cir.1937), *cert. denied,* 305 U.S. 605, 59 S.Ct. 65, 83 L.Ed. 384 (1938):

> No rule is better settled than that in tax matters we must look to substance and not to form; and no one who looks to substance can see in the mere change of charters, which is all that we have here, any reason for permitting a transfer of a part of the corporate assets to escape the taxation to which it is subject under the statute.

While not from our Circuit, other cases are informative. In *American Potash & Chemical Corp. v. United States,* 399 F.2d 194, 199, 185 Ct.Cl. 161 (1968), the court said:

> Taxpayer's intent is considered in determining the existence of an overall plan to accomplish a particular result by a series of steps and in determining the existence of a plan to reorganize. The existence of either a plan to reorganize or a plan to accomplish a particular end result, however, does not necessarily mean that the particular route chosen to accomplish the desired result qualifies as a reorganization, as that term is defined in the statute.

*See also Simon v. Commissioner,* 644 F.2d 339, 343 (5th Cir.1981):

> To meet the requirement of a "plan," however, it is sufficient if the steps taken as a whole constitute a reorganization. *Davant v. Commissioner,* 366 F.2d 874, 883 (5th Cir. 1966); *Liddon v. Commissioner,* 230 F.2d 304, 309 (6th Cir.1956). There need not be a written or formally-prepared plan of reorganization.

We distill from these cases that a written plan of reorganization will not simply satisfy the requirements of Section 368 nor will the absence of a written plan negate the right to claim the benefit of Section 368. The courts look to the substance of the transaction. However, the existence of a written plan may have some evidentiary value on the determination whether a valid plan of reorganization under Section 368 was intended.

interest as provided by law. It is understood that this report is subject to acceptance by the District Director.

A little over two weeks after receiving Bamber's letter, the taxpayer filed this refund suit. The Government answered the taxpayer's suit by first denying jurisdiction over the refund claim for the tax year 1983, because the taxpayer had not paid any taxes for that tax year, even though the taxpayer alleged in its complaint that it "had paid all income tax, penalties, additions to tax, additional amounts, and interest assessed by defendant, if any." The Government also pleaded lack of jurisdiction over the refund claim for 1985 taxes since the taxpayer had not paid such tax in full. *See Flora v. United States*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). It conceded jurisdiction of the 1984 tax year refund claim but joined issue on the claim of liability for refund for that year. Various requests for interrogatories were filed and depositions taken. In particular, the Government examined on deposition certain of taxpayer's officers on the circumstances related to the transaction between R & D and the taxpayer. After this examination, the Government seemed satisfied that a valid reorganization under Section 368 had been effected and conceded the taxpayer's claim for refund for the tax year 1984, and actually paid the taxpayer such refund. The taxpayer also agreed at that time to the dismissal of its claims for tax refund for the tax years 1983 and 1985, apparently for the reasons assigned by the Government. With these agreements, the parties submitted to the court their consented order of dismissal which the district judge signed.

Following this dismissal, the taxpayer filed its petition for the allowance of fees under Section 7430(b)(1) of the Internal Revenue Code of 1986. In a memorandum submitted in support of its fee petition, the taxpayer sought to excuse its failure to exhaust administrative remedies by alleging that "[e]ven if there were further avenues of [administrative] appeal available, plaintiff was unaware of them, since the IRS never informed the plaintiff of those rights." On this basis, it accordingly alleged that it had exhausted administrative remedies. The taxpayer then argued in this memorandum that it, the taxpayer, was the "prevailing party," since the Government was "not substantially justified in its defense" and the taxpayer had "prevailed in the most significant issue presented." The taxpayer identified the "most significant issue" as the "subsection D" reorganization treatment, or, more specifically "whether Kenlin Industries is the successor to R & D Urethanes." It further asked that the cap in fees allowed be raised in this case because, as it alleged, its counsel (Mr. Kellogg) "is an expert in tax law. He holds a Master's degree in Taxation from Georgetown University. He taught tax law for some years at George Washington University School of Law. The bulk of his practice involves representing individuals and corporations before the IRS and the Virginia tax authorities. This expertise entitles plaintiff to enhanced fees under 26 U.S.C. § 7430(C)(1)(B)(ii)."

The Government responded to the taxpayer's memorandum by declaring that the allowance of any attorney's fees in favor of the taxpayer was foreclosed by its failure to exhaust administrative remedies and that the Government's position was "reasonably justified" since "until [it] was able to depose taxpayer's officers, it had insufficient facts to determine whether a valid 'D' reorganization had occurred."[4] To this response, the taxpayer filed a response restating its previous contentions as stated in its memorandum.

## II.

The petition of the taxpayer for attorney's fees was submitted to the district

---

**4.** This contention was not entirely unreasonable. The Agent's denial was not based entirely on the absence of a written plan of reorganization but was issued, as it declared, "because there was no written plan and the corporate conduct did not approximate a reorganization" under Section 368. In short, the Government, echoing what the Agent had written, was saying in effect that the "substance" of the transaction did not meet the standards for a reorganization under Section 368.

court on the record with the statement of positions by the parties. The district court granted in substantial part the taxpayer's request, using an enhanced rate for the award. The dispositive part of the district court's ruling allowing taxpayer attorney's fees was as follows:

This matter came before the court on plaintiff's motion for attorney's fees and costs arising out of a claim filed by Kenlin Industries against the United States to recover income tax refunds. Plaintiff first brought its claim to the attention of the Internal Revenue Service in June of 1986. In January of 1989 plaintiff was notified that the IRS had denied its claim. The government now asserts that it was without the proof necessary to conclude plaintiff's entitlement. However, at no point during the past three years has plaintiff changed its position regarding its rights to the refunds. If the IRS wanted proof to support the claim it need only have asked for it. Instead, plaintiff was forced to file a law suit which quickly ended by the government's concession. As such, it is the opinion of this court that the government was not substantially justified in its position and plaintiff is entitled to recover reasonable attorney's fees and costs as allowed under 26 U.S.C. § 7430 of the Internal Revenue Code.

The district judge made awards for three attorneys, with each award exceeding the suggested rate of $75 per hour. For two attorneys he found an allowance of $100 per hour, and $150 per hour was given "for the tax specialist, Mr. Kellogg." The district court did not refer to the obligation of the taxpayer under Section 7430(b)(1) to exhaust any remedies available to it under the Internal Revenue Code of 1986, and the court made no finding that the taxpayer had exhausted such administrative remedies. Also, the court did not make a distinction between fees incurred in the administrative proceedings and those incurred during the court proceeding.

### III.

█ It should be noted at the outset that this is a suit for attorney's fees and costs against the Government in a tax refund case. As such, this case would be barred by the doctrine of sovereign immunity *unless* Congress has by statute expressly waived the doctrine for this type of case; if such waiver has been given, it must be strictly construed in favor of the Government. *Library of Congress v. Shaw*, 478 U.S. 310, 318, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986); *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983). As the taxpayer's motion correctly alleges, Congress has waived immunity in favor of the allowance of attorney's fees and costs in refund cases against the Government, but this waiver is *subject* to certain express conditions or "limitations." These "limitations," as the statute characterizes them, are: (1) the taxpayer must exhaust all administrative remedies available to it within the Internal Revenue Service before suit; (2) it must be "the prevailing party" as that term is defined in Subsection (c)(4), Section 7430; and (3) the claim must be "reasonable."

█ The initial or threshold requirement imposed on a taxpayer asserting a claim under Section 7430 is the exhaustion of administrative remedies before suit. The purpose of such requirement was stated by the Senate Committee on Finance in its comment on the requirement:

This provision of the amendment is intended to *preserve the role that the administrative appeals process plays* in the resolution of tax disputes by requiring taxpayers to pursue such remedies prior to litigation. * * * This rule will prevent taxpayers from recovering litigation costs when the litigation might have been avoided or reduced in scope through use of administrative remedies.

Technical Explanation of Committee Amendment, 127 Cong. Rec. S15594 (daily ed. Dec. 16, 1981) (emphasis added). Such a requirement in administrative proceedings is common, as we recognized in *Mullins Coal Co. v. Clark*, 759 F.2d 1142, 1145 (4th Cir.1985):

Exhaustion [of administrative remedies] allows the administrative agency to act within the sphere of its special competence, to apply its expertise, and to correct its own errors, and it creates a reasonable division of labor between agency and court.

The taxpayer in this case recognized that, as a condition to any right to attorney's fees or costs against the Government, it had to establish that all administrative remedies available to it had been exhausted before suit.[5] The taxpayer concedes that the administrative remedy available to a taxpayer was an Appeals Office conference, with the right of the taxpayer to such administrative review given exclusively by Treas.Reg. § 301.7430–1(b). The taxpayer contends, however, that Treas.Reg. § 301.7430–1(b) expired by its express terms as of January 1, 1986 and, accordingly, "could not have required [the taxpayer] to pursue a conference with the Appeals office" in this case, which arose and was filed after January 1, 1986. Therefore, according to this argument, the expiration of the Treasury Regulation made administrative review of the Internal Revenue Service Agent's decision unavailable. According to the taxpayer, it was thus excused from the obligation to exhaust administrative remedies. This argument rests on a plain misunderstanding of the purpose and effect of Treas.Reg. § 301.7430–1(b). We find that the taxpayer in this case did have an administrative remedy for appeal consideration, and that it failed to avail itself of such.

It is true that Treas.Reg. § 301.7430–1(b) did expire by its express terms on January 1, 1986, the same as Section 7430 did originally. Section 7430, though, was enacted as permanent legislation by Section 1551(g) of Pub.L. No. 99–514, 100 Stat. 2085, § 1551(g) in the fall of 1986. This legislation, which was not enacted until after January 1, 1986, was made applicable to any suit filed between January 1, 1986, and the date of the enactment of permanent Section 7430. It is also true that Treas.Reg. § 301.7430 was not re-issued by the IRS as Congress had done with respect to Section 7430, but there is an obvious reason for the difference. Without the re-enactment of Section 7430 after January 1, 1986, there would have been no waiver of sovereign immunity and consequently no right of a taxpayer to receive an award of attorney's fees and costs. But Treas.Reg. § 301.7430 does not create any right of the taxpayer to attorney's fees or costs; it is the statute (Section 7430) which does that. The Regulation is purely advisory, not mandatory, as its preamble, Treas.Reg. § 301.7430, so declares.[6] All the Regulation does is to provide the taxpayer with advice and guidance on the circumstances under which the IRS itself would conclude that the taxpayer had met its burden of satisfying the requirement of administrative exhaustion under the mandate of Section 7430. In that connection, it does identify the other specific Regulations which set forth the procedures whereby the taxpayer could obtain an "Appeals Office conference" for review of the IRS Agent's denial of the taxpayer's application for a refund (Treas.Reg. §§ 601.105 and 601.106). Since Section 7430 was re-enacted by the Tax Reform Act of 1986, Treas.Reg. § 301.7430 would be assumed

---

**5.** The taxpayer declares in its brief in this court: "In order to claim attorney's fees and costs under 26 U.S.C. § 7430 the prevailing party must exhaust the administrative remedies available within the Internal Revenue Service."

This requirement is not a prerequisite to the taxpayer's right to recover on its refund claim; its "limitation" applies only when the taxpayer seeks, in addition to the refund, attorney's fees and costs under Section 7430. This is so because there is no such requirement for recovery in a refund claim itself but it is expressly declared by the enabling statute to be an essential requirement for a subsequent motion for attorney's fees and costs against the Government.

**6.** Subsection (a), the preamble of the Regulation is as follows:

(a) In general. Section 7430(b)(2) provides that a court shall not award reasonable litigation costs in any civil tax proceeding under section 7430(a) unless the court determines that the prevailing party has exhausted the administrative remedies available to the party within the Internal Revenue Service. *This section sets forth the circumstances in which the Internal Revenue Service normally will consider such administrative remedies exhausted.*

Treas.Reg. § 301.7430–1(a) (emphasis added).

to continue to provide guidance to the taxpayer after January 1, 1986, as to the circumstances under which the Service would continue to decide whether there had been administrative exhaustion. This seems to have been the conclusion of tax treatises, which continued after January 1, 1986, to refer to Treas.Reg. § 301.7430 as the guide for the taxpayer in ascertaining the circumstances under which the Service would consider there to have been administrative exhaustion.[7] This also seems to be the reason why Treas.Reg. § 301.7430 continues to be included in the April 1990 revision of Part 301. *See also Lawler v. United States*, 16 Cl.Ct. 53, 57 (1988).

Since Treas.Reg. § 301.7430 does not create the requirement for administrative exhaustion, nor does it provide the mechanism for administrative review on "appeal," it is immaterial whether or not it was reissued after January 1, 1986. Neither is this Regulation the procedural source for the exercise by the taxpayer of its right of "Appeal consideration." Indeed, Treas. Reg. § 301.7430 disclaims any such authority and clearly directs the taxpayer to Treas.Reg. § 601.106 and Treas.Reg. § 601.105 as the authority for such right to administrative appellate review. It is thus clear that there is no merit whatsoever in the taxpayer's plea that the failure of the Service to re-issue Treas.Reg. § 301.7430 resulted in the loss by it of any right on its part to administrative review. Treas.Reg. § 601.106, which is entitled "Appeals func-

tion," sets forth clearly the procedure available to the taxpayer in this case for use in securing review by way of an "Appeals Office conference." As the Court in *Lawler v. United States*, 16 Cl.Ct. at 57, said: "The administrative remedy provided by the IRS is the Appeals office conference. 26 C.F.R. § 601.106 (1988)." The taxpayer here did not avail himself of such administrative appeal and, by the explicit mandate of Section 7430(b)(1), it thereby forfeited any right to an award of attorney's fees and costs against the Government.

The next justification by the taxpayer for its failure to exhaust is even more bizarre than the first: it asserts that it did not know what administrative remedies it had, and that the Service had failed to advise it of such remedies. It is incredible that the taxpayer would plead ignorance of the remedies available under Treas.Reg. §§ 601.-105 and 601.106. The taxpayer was no unsophisticated, illiterate, or unlearned taxpayer; it was represented at all times by experienced business executives who were armed throughout the proceedings with the advice and counsel of one whom the taxpayer declares was an able and experienced expert in tax procedures and law. Certainly its expert counsel knew both of Section 7430, and its positive requirement for administrative exhaustion, and of Treas.Reg. §§ 601.105 and 601.106. The knowledge of its counsel must be imputed to the taxpayer. Moreover, Form 4549, which was included in the Agent's letter to the taxpay-

---

7. M. Garbis, P. Junghans & S. Struntz, *Federal Tax Litigation* § 23.01 (1985), states:

> The statute [Section 7430] prohibits the award of reasonable litigation costs unless the court finds that the prevailing party exhausted the administrative remedies available to him under the Service's review procedures.

> The writers then add, relying on Section 301.-7430–1, that "[g]enerally, a taxpayer must participate in an Appeals Office conference, if available." ·

*Refund Litigation,* Tax Management (BNA) ser. 124–4th, at A–22 (Dec. 19, 1988), declared that "[t]o qualify for an award under § 7430," a taxpayer

> [m]ust have exhausted the administrative remedies available to the taxpayer within the IRS. Code § 7430(b)(1); Regs. 301.7430–1. In the case of a tax refund suit, exhaustion means seeking an Appeals Office conference

if one is available and participating in one if one is granted.

J. Mertens, *The Law of Federal Income Taxation,* § 58A.43, at 162, n. 34 (1990), states:

> Reg. § 301.7430–1(b) provides that a party has not exhausted its administrative remedies unless the party has requested and, if granted, has participated in an Appeals Office conference available under §§ 601.105 and 601.106 of the Statement of Procedural Rules prior to filing a petition in the Tax Court or an action for refund.

This footnote reference to Treas.Reg. § 301.7430–1(b) is cited as supporting this statement in the text itself: "In most cases it is necessary to show that the prevailing party exhausted the administrative remedies available within the Service before instituting litigation." *Id.* at 162.

er, contains a reference to the "appeal rights within the Internal Revenue Service" of the taxpayer. There simply is no basis for an argument that the taxpayer here was ignorant of its obligations under Section 7430 to exhaust administrative remedies if it wished to request an award of attorney's fees or costs.

The taxpayer, though, argues that, irrespective of whether it had knowledge of its administrative remedies, it was absolved of any duty to comply with the requirement for administrative exhaustion under Section 7430 because of the failure of the Service to include in its letter of January 8 to the taxpayer information of the "appeal rights available [to it] if he or she disagrees with the proposed determination" as stated in Treas.Reg. § 601.105(d)(1)(iv). We have heretofore had occasion to consider this Regulation and held that such Regulation was "directory and not mandatory in legal effect," intended as such "to govern the conduct of the agents of the Internal Revenue Service in the performance of their duty to determine the correctness of the income tax returns of the taxpayers." *Luhring v. Glotzbach*, 304 F.2d 560, 564–65 (4th Cir.1962). Such a procedural rule could not absolve the taxpayer of its obligation imposed expressly by the statute to exhaust administrative remedies. To hold otherwise would be to permit the positive mandate of the statute to be repealed or negated by an administrative regulation.

We conclude that it is manifest that the taxpayer has failed to satisfy the express requirement of Section 7430 that, as a condition to recovery of attorney's fees and costs thereunder, the taxpayer must exhaust administrative remedies available to it within the Internal Revenue Service prior to suit. Such failure is conclusive against an award of attorney's fees and costs in this case. It is, therefore, unnecessary to consider other objections of the Government to the award herein, even though the Government has raised serious questions connected with the award on other grounds.

The cause is remanded to the district court, with directions to dismiss the motion of the taxpayer for an award of attorney's fees and costs without prejudice.

REMANDED WITH INSTRUCTIONS.