**Thomas T. LAWLER, Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**No. 57–88T.**

United States Claims Court.

Dec. 8, 1988.

---

**54**

Jay R. Oliff, San Jose, Cal., for plaintiff.

Robert J. Higgins, Washington, D.C., with whom was Asst. Atty. Gen. William S. Rose, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This is the adjudication of plaintiff's application for attorneys' fees and related costs brought pursuant to 26 U.S.C. § 7430 and 28 U.S.C. § 2412. Defendant opposed the payment of any such fees and costs. The case-in-chief was settled by the parties in favor of plaintiff shortly after being filed.

## FACTS

According to the rather sparse record before the court on the case-in-chief and as we understand it, it appeared that plaintiff was a citizen of the United States, but also a bona fide resident of the Republic of France from early–1975 through mid–1979 when he returned to the United States. While living in France, plaintiff incurred a tax liability that he paid to the Republic in the amount of US$53,807.00. During and after his residency in France, plaintiff's United States federal income taxes were withheld and retained by the Internal Revenue Service (IRS). In 1983 plaintiff filed his 1979 federal tax return reporting a net liability after applying the credit for foreign taxes paid to the Republic of France, as well as an overpayment. Plaintiff requested that the IRS apply that overpayment and other overpayments to his 1980 and 1981 United States federal tax liabilities.

In November 1983 the IRS notified plaintiff that it would not permit the carry-over because his claim of overpayment had been

filed more than three years after the due date and was barred by 26 U.S.C. § 6511(a) (1982). On May 15, 1987 the IRS disallowed plaintiff's overpayment application for 1979, 1980 and 1981. Plaintiff then filed a formal claim for the overpayment, with interest, on the basis that he had properly elected under 26 U.S.C. § 901 (1982) to apply the overpayment as a credit and that the limitations period was ten years, 26 U.S.C. § 6511(d)(3), and not three years, 26 U.S.C. § 6511(a). The IRS took the position that the ten-year period of limitations applied only to adjustments of previously claimed foreign tax credits, not where, as here, the taxpayer amended a return to claim credit for previously unreported foreign taxes.

Plaintiff explained to defendant that the IRS' position was contrary to the holdings of our predecessor court and other courts, *Hart v. United States*, 218 Ct.Cl. 212, 585 F.2d 1025 (1978); *United States v. Woodmansee*, 578 F.2d 1302 (9th Cir.1978); *Blackmon and Assoc. v. United States*, 78–1 USTC ¶ 9443 (N.D.Tex.1978) [available on WESTLAW, 1978 WL 1222], and that in 1982 the IRS Chief Counsel had issued an "Action on Decision" expressing agreement with the holdings of those decisions. The United States, represented by counsel from the United States Department of Justice, was persuaded that plaintiff was correct and the case was settled shortly thereafter by the refund of the full amount claimed, plus interest.

Pursuant to the stipulated settlement of the case-in-chief, judgment was entered by the court on July 7, 1988. On August 16, 1988 plaintiff filed the present petition for attorneys' fees, estimated to be $6,283.99 [1] as of August 9, 1988, but with the proviso that should he prevail in this action he would seek additional funds for the costs incurred. Plaintiff also petitioned for the reimbursement of fees paid to Price Waterhouse and Company, certified public accountants, in the amount of $5,488.00 for the preparation, filing and prosecution of

---

**1.** This amount consists of $5,462.50 in billed fees, billed costs of $71.49 and unbilled fees of

$750.00. Declaration of Jay R. Oliff, August 9, 1988, attached to the petition.

the refund claim before the Internal Revenue Service.

## DISCUSSION

It is black letter law that the United States is immune from suit except as it consents to be sued. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). "[T]he terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit," *id.*, and any waiver of the government's sovereign immunity is to be strictly construed in favor of the government. *See Library of Congress v. Shaw*, 478 U.S. 310, 318, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986); *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685, 103 S.Ct. 3274, 3277, 77 L.Ed. 2d 938 (1983); *McMahon v. United States*, 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951). Both 26 U.S.C. § 7430 and 28 U.S.C. § 2412 constitute waivers of traditional immunity enjoyed by the sovereign.

■ At the outset of this Order, the court noted that the action was brought under 26 U.S.C. § 7430 and 28 U.S.C. § 2412(d). The latter, the Equal Access to Justice Act (EAJA), is remarkably similar to 26 U.S.C. § 7430 of the Internal Revenue Code enacted on September 3, 1982 as part of the Tax Equity and Fiscal Responsibility Act. In its pleadings defendant appeared to agree with plaintiff, at least in part, that the EAJA might provide partial relief to plaintiff for costs which may be awarded pursuant to 28 U.S.C. § 2412(a) but, presumably, not 26 U.S.C. § 7430. Plaintiff's reliance upon the EAJA for any costs which might not be permitted by section 7430 is misplaced. *Prudential–Bache Sec. Inc. v. Tranakos*, 593 F.Supp. 783, 786 (N.D.Ga.1984). Section 7430 fully supplanted the EAJA for the award of attorneys' fees and costs in proceedings to which section 7430 is applicable. *Id.* Indeed section 2412(e) of the EAJA states clearly that "the provisions of this section shall not apply to any costs, fees, and other expenses in connection with any proceeding to which section 7430 of the Internal Revenue Code of 1954 applies." Section 7430 is

the exclusive remedy in civil proceedings for attorneys' fees

> (1) brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, and
> (2) brought in a court of the United States (including the Tax Court [and the United States Claims Court])....

26 U.S.C. § 7430(a). The present action falls entirely within the confines of the statute and any recovery under the application at bar is limited to that permitted exclusively by section 7430(a). To further dispel of any lingering doubt that this action is governed solely by section 7430 one need but look to the legislative history of the section, which states that it is the exclusive provision of awards of litigation costs in any action or proceeding to which it applies. *See* Staff of Joint Comm. on Taxation, 97th Cong.2d Sess., General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982, at 444–45 (Joint Comm. Print 1982); *see also Columbus Fruit & Veg. Coop. Ass'n. v. United States*, 8 Cl.Ct. 525, 527–28 (1985); *Sharpe v. United States*, 607 F.Supp. 4, 7, 8 (E.D.Va.1984) (section 7430 was intended to do no more than supplant the EAJA in tax matters and share the common goal of the award of attorneys' fees when the United States has acted unreasonably). This does not mean, however, that the court may ignore or look askance at precedent developed under the EAJA to the extent that it would be helpful in understanding or defining common issues, though any award ultimately allowed by this court must be solely pursuant to section 7430. Indeed, there are several areas of overlap in which EAJA precedence has direct bearing on the standards used under section 7430. For example, the "reasonableness" standard is "essentially the same [in section 7430] as that used in 28 U.S.C. § 2412." *Filice v. United States*, 621 F.Supp. 1184, 1186 (1985). "There is no 'dispositive difference' between the § 2412 and § 7430 'reasonableness' tests." *Id.* (*quoting Kaufman v. Egger*, 584 F.Supp. 872, 877 (D.Me.1984), *aff'd*, 758 F.2d 1 (1st Cir.1985)). The legislative history of the

EAJA, equally applicable to 26 U.S.C. § 7430, discussed below, made it clear that the Congress meant to hold the United States answerable to federal fee-shifting laws.

"Under present [pre-EAJA] law in the United States each party is responsible for the payment of his own attorneys' fees and other expenses incurred during litigation. The 'American rule,' however, has both common law and statutory exceptions." H.R.Rep. No. 96–1418, at 8, U.S.Code Cong. & Admin.News 1980, at 4986. The Committee ... [noted] that "Congress has authorized the recovery [of] fees in a variety of contexts, usually to effectuate a specific and compelling public interest." H.R.Rep. No. 96–1418, at 8, U.S.Code Cong. & Admin.News 1980, at 4986. The laws cited as exceptions are all federal ... *Id.* Indeed the committees specifically noted that the federal government would "be liable under the same standards which govern awards against other parties under *Federal* statutory exceptions." H.R.Rep. 96–1418, at 17, U.S.Code Cong. & Admin. News 1980, at 4996.

*Olson v. Norman,* 830 F.2d 811, 822 (8th Cir.1987) (emphasis in original). Accordingly, the award of court costs and fees is here governed by 26 U.S.C. § 7430 which provides for the payment of reasonable litigation costs if plaintiff exhausted his administrative remedies and if defendant's position was unreasonable. *Filice v. United States,* 621 F.Supp. at 1186.

■ As a preliminary matter, the court finds it relevant to point out that this case is not one of first impression factually, but that it is unique in that the case-in-chief, the proceeding to which the court would normally look to discern whether defendant was substantially justified, was never tried nor argued on dispositive motions. In its simplest terms, the complaint was filed and the case was settled in favor of plaintiff. It is, therefore, the duty of the court to inquire into the position the IRS took prior to that point in time. The mere fact that defendant settled the suit to plaintiff's benefit, while an admission of wrongful conduct, is not enough. *Pierce v. Underwood,*

— U.S. —, 108 S.Ct. 2541, 2552, 101 L.Ed.2d 490 (1988); *Kaufman v. Egger,* 584 F.Supp. at 877, 878. We know that plaintiff initiated a civil proceeding when he filed his complaint, and was, as hindsight shows, forced to file suit to persuade defendant to take a reasonable position. We also know, from the record and experience, that costs were incurred. *Kaufman* held "that where Defendants stipulate to entry of judgement, that [the] 'position of the United States' which it shall examine for the purposes of determining reasonableness shall be their prelitigation conduct which engendered the civil proceeding." *Id.*

Where defendant's unreasonable actions forced plaintiff to seek court relief, defendant, rather than plaintiff, should have to bear the costs that its conduct generated. Congress did not intend and the court cannot allow defendant to escape liability for legal expenses it caused plaintiff to incur merely because they settled after the civil case had commenced. *See* H.R.Rep. 97–404, 97th Cong. 2nd Sess. 16 (1982), *reprinted in,* 127 Cong.Rec. § 15595 (daily ed. Dec. 16, 1981). Moreover, it coincides with Congress' desire that section 7430 will encourage taxpayers to settle cases, rather than litigate them in hopes of "winning an award of litigation costs." *Kaufman v. Egger,* 584 F.Supp. at 878. Likewise, *Hallam v. Murphy,* 586 F.Supp. 1, 3 (N.D.Ga. 1983) found that the proper time frame to view defendant's conduct is throughout the entire tax proceeding, not just defendant's conduct after suit was filed.

*Exhaustion of Administrative Remedy*

■ Title 26 of the United States Code, section 7430(b)(1) states that

[a] judgment for reasonable litigation costs shall not be awarded ... unless the court determines that the prevailing party has exhausted its administrative remedies available to such party within the Internal Revenue Service.

Section 7430(b)(1) of the Code is implemented at 26 C.F.R. § 301.7430–1, *et seq.,* (1988), which states, in part, that a "party has not exhausted its administrative remedies with-

in the Internal Revenue Service with respect to any tax matter for which an Appeals office conference is available," § 301.7430–1(b), unless prior to filing a civil action in a court of the United States plaintiff "[p]articipates, either in person or through a qualified representative ... in an Appeals office conference...." § 301.7430–1(b)(i)(A).

The keystone upon which plaintiff built its case, 26 C.F.R. § 301.7430–1(f)(3)(iii) (1988), stated that *a party's administrative remedies within the Internal Revenue Service will be considered exhausted for purposes of 26 U.S.C. § 7430 if the party*

[d]id not receive either written or oral notification that an Appeals office conference had been granted within six months from the date of the filing of the claim for refund and the failure to receive such notice was not due to actions of the [plaintiff]. . . .

It is upon this last quoted section of the regulations that plaintiff opted to argue that it had met the administrative remedial requirement of the law, *i.e.,* it did not have to expressly exhaust its remedy because the IRS gave neither oral nor written notice that an Appeals office conference had been granted. Plaintiff would have the court find that by operation of the regulations, having the full force and effect of law, that plaintiff's administrative remedies were implicitly exhausted. *Maryland Casualty Co. v. United States,* 251 U.S. 342, 349, 40 S.Ct. 155, 158, 64 L.Ed. 297 (1920).

The court is not persuaded that plaintiff is correct. The administrative remedy provided by the IRS is the Appeals office conference. 26 C.F.R. § 601.106 (1988). The absence of an opportunity for the IRS to "grant" an Appeals office conference had no effect upon settlement of the case-in-chief, but it is clear that this court may not enter a judgment for attorneys' fees and related costs in the absence of such an opportunity, or a waiver per 26 C.F.R. § 301.7430–1(f)(3)(iii). The term "granted" as used in section 301.7430–1(f)(3)(iii) logically presupposes a request for a conference made by the taxpayer per 26 C.F.R.

§ 601.106(a). That section of the Code, entitled "Appeals functions" states tersely at subsection (a)(1)(iii) that "[t]he taxpayer must request Appeals consideration." Plaintiff failed to make such a request. The issue is further clarified by the twelve examples set forth in 26 C.F.R. § 301.7430–1(g), each of which states that for an Appeals office conference to be "granted" it must be requested by the taxpayer. Examples 1 and 3 are especially illustrative to wit:

Taxpayer A exchanges property held for investment for similar property and claims that the gain on the exchange is not recognized under section 1031. The Internal Revenue Service conducts a field examination and determines that there has not been a like-kind exchange. No agreement is reached on the matter and a preliminary notice of proposed deficiency (30–day letter) is sent to A. *A does not file a request for an Appeals office conference.* A pays the amount of the proposed deficiency and files a claim for refund. A preliminary notice of proposed disallowance is issued by the Internal Revenue Service. *A does not request an Appeals office conference* and, instead, files a civil action for refund in a United States District Court. A has not exhausted the administrative remedies available within the Internal Revenue Service.

\* \* \* \* \* \*

Assume the same facts ... *except A first requests an Appeals office conference* after A's receipt of the preliminary notice of proposed disallowance. A is granted an Appeals office conference and A participates in such conference. A has exhausted the administrative remedies available. . . .

*Id.* (emphasis added). The IRS can be labeled many things but it cannot be labeled all-prescient. A taxpayer may have filed a claim and the IRS may have denied the claim. At that stage nothing more is known by the IRS. The taxpayer may decide not to pursue its claim further for any number of reasons. For the IRS to review at a higher level every denied claim

to determine whether to convene an Appeals' office conference would be a fruitless, wasteful act akin to the United States Court of Appeals for the Federal Circuit automatically reviewing every judgment entered against the plaintiff in the United States Claims Court to determine if it wished to rule on the case regardless of the feelings of the claimant. If the unsatisfied taxpayer wishes to pursue its claim, it must take the initiative and request review. Plaintiff cannot be permitted to sit on his administrative remedy in silence for six months, knowing full well that the opportunity for the IRS to convene a conference is a mandated condition precedent to the award of litigation costs, and then cry "foul" when his costs are denied. The court finds that the scheme for the recovery of litigation costs as envisaged by the Congress requires that the IRS be given the opportunity to convene an Appeals office conference as a prerequisite to the recovery of litigation costs, and that a request for an Appeals office conference by plaintiff was the condition precedent to a conscious decision by the IRS to grant or deny a conference and an absolute condition to the award of attorneys' fees and costs.

 Two additional factors have persuaded the court that an Appeals office conference must be requested before plaintiff may take refuge behind the protection of 26 C.F.R. § 301.7430–1(f)(3)(iii). Prior to enactment of 26 U.S.C. § 7430 and 28 U.S. C. § 2412, prevailing plaintiffs in lawsuits against the United States were generally required to bear their own costs of litigation. With the enactment of those laws the United States became subject to liability, under certain conditions, for plaintiff's costs. *See e.g., Cable Atlanta, Inc. v. Project, Inc.*, 572 F.Supp. 1113, 1115–16 (N.D.Ga.1983). Because an award of attorneys' fees under section 7430 effects a waiver of sovereign immunity, the rule of strict construction, discussed above at length, would apply. Strict compliance with the conditions of liability is an absolute prerequisite to this court's authority to enter judgment for reasonable litigation costs as provided in 26 U.S.C. section 7430(b)(1). *Monark Boat Co. v. NLRB*, 708 F.2d 1322, 1327 (8th Cir.1983). The intent of section 7430 was clear to the Congress and it is clear to this court. "The plain words of the statute [and regulations] literally and lucidly reflect the limitations and conditions upon which the government has consented to be sued." *J.H. Miles & Co. v. United States*, 3 Cl.Ct. 10, 13 (1983). The result may be harsh upon plaintiff in this case, but if plaintiff seeks a remedy it is certainly not against the United States.

The court is also persuaded that plaintiff may not successfully reach the section 301.-7430–1(f)(3)(iii) safe harbor in view of plaintiff's analysis in its application for a rate of attorneys' fees and costs above the general limit contained in the law. Plaintiff referred the court to 26 U.S.C. § 7430(c)(1)(A)(ii)(III) which defined "reasonable" attorneys' fees as $75 per hour "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for such proceeding, justifies a higher rate." We look to the latter reason in this analysis. *Pierce v. Underwood*, —— U.S. ——, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), cited by defendant for the proposition that increased fees should be awarded only where "some distinctive knowledge or specialized skill" is necessary, gave as an example, "an identifiable speciality such as patent law." *Id.*, 108 S.Ct. at 2554. Plaintiff, in its application, asserted

> that dealing with taxation and Internal Revenue Code matters is recognized as requiring the same distinctive knowledge or specialized skill as patent matters and is recognized as a similar distinctive specialty. The declaration submitted by plaintiff's counsel clearly establishes that he does possess the necessary degree of specialized skill and knowledge in taxation and Internal Revenue Code matters to qualify as a specialist in those matters. In this connection, it is noted from the supplementary declarations accompanying this memorandum, that the United States Bankruptcy Court for the Northern District of California recently ap-

proved plaintiff's counsel's $125.00 per hour fee for services as special tax counsel to the debtor.

\*　　\*　　\*　　\*　　\*　　\*

Contrary to defendant's assertions as to the simplicity of the issues in the instant case, the issues are actually rather esoteric in nature involving the interplay of intricate Internal Revenue Code provisions on foreign tax credits and limitation periods. Thus the issues required an attorney with the specialized skill and knowledge possessed by plaintiff's counsel to deal with them. Accordingly, *Pierce v. Underwood* [supra] should not preclude awarding the fee based on the $125.00 per hour rate claimed herein.

The reader should note that this portion of the Order is not directed towards plaintiff's argument that he is entitled to increased attorneys' fees because of counsel's "specialized skill and knowledge." The court has no reason to believe that plaintiff's counsel is not, as claimed, skilled in the intricacies of tax law. That being the case, however, the court cannot believe that plaintiff, through counsel, was not aware of the necessity of requesting an Appeals office conference as a condition precedent to the award of attorneys' fees. This factor weighed heavily in the court's finding. It completely negated plaintiff's argument that he was not required to request an Appeals office conference because the IRS did not advise him of that right, or that through counsel, he was ignorant of the requirement to request the Appeals office conference. The requirement was clear and plaintiff ignored it at his peril.

For the reasons set forth above, the court is of the opinion, and so finds pursuant to a strict interpretation of the law, that affording the IRS an opportunity to convene an Appeals office conference was a condition precedent to the award of attorneys' fees and costs and that the burden was upon plaintiff to request that conference. Therefore, 26 C.F.R. § 301.7430–1(f)(3)(iii) is not available to plaintiff as an inferred exhaustion of administrative remedies. The court will not try to guess why plaintiff chose to not seek an Appeals office conference, but that decision was fatal to his request for attorneys' fees and costs. Plaintiff has not exhausted his administrative remedies and, therefore, the court is without authority to award such fees and costs. 26 U.S.C. § 7430(b)(1).

■ Likewise, it would be ludicrous to deny to plaintiff attorneys' fees and costs under the case-in-chief for failure to exhaust his administrative remedy, and to then do an about face and allow reimbursement of additional fees and costs expended in seeking those denied costs. The result would be the same even if the court, *arguendo,* addressed the administrative claim and these legal proceedings as two separate actions. Plaintiff may not recover under section 7430 for fees and costs of prosecuting the claim before the IRS because he failed to exhaust his administrative remedies; a clear, understandable condition precedent to the ability of this court to award such fees and costs regardless of the merits of the claim. That very same failure now precludes the court from awarding fees and costs to plaintiff for his abortive attempt to recover fees and costs under his initial application. Of equal merit in denying fees and costs incurred under this application is the fact that plaintiff did not prevail under the former application. Since only a prevailing party may be awarded litigation costs, the court is precluded from awarding fees and costs for the application. 26 U.S.C. § 7430(a). The same conclusion must also be reached for plaintiff's claim for reimbursement of the accountant's costs. Even if the court were to find that costs for the efforts expended by the accountant were reimbursable under 26 U.S.C. § 7430(c)(A)(ii)(II), the court would be precluded by 26 U.S.C. § 7430(b)(1) from awarding such costs. 26 U.S.C. § 7430(a)(2) permits the court to award reasonable litigation costs for studies, analyses, etc. "if found by the court to be necessary for preparation of the party's case," § 7430(c)(1)(A)(ii)(II), but only if plaintiff exhausted his administrative remedies, § 7430(b)(1).

**60**

## CONCLUSION

Based upon the foregoing findings, this court concludes that it may not by the strict application of 26 U.S.C. § 7430(b)(1), award attorneys' and accountants' fees and costs for expenses incurred by plaintiff during his pre- and post-litigation efforts to recover funds wrongfully withheld by the IRS. In the ordinary course of events, however, the failure to exhaust administrative remedies is not fatal. Normally, the party is allowed to correct the oversight and, if need be, continue the litigation. The court under other circumstances would suspend action under the litigation, or dismiss the case without prejudice pending compliance with the administrative remedy. This case, however, is unique and does not fit the usual mold in that it would be fruitless to permit plaintiff at this stage of the proceedings to seek an Appeals office conference. The purpose of that conference was to give the IRS an opportunity at a higher level of review to assure itself that its position was valid and that the taxpayer had been treated fairly. Here, if an Appeals office conference were even granted, the conclusion would be foregone—defendant has already admitted guilt. The conference would be a sham; its only purpose would be to open the door to permit plaintiff to seek litigation costs. The court cannot be a party to such a proceeding. It is, therefore, ordered that plaintiff may not recover attorneys' fees and costs under 26 U.S.C. § 7430 because he failed to exhaust the administrative remedy available to him by the IRS. Plaintiff's application for litigation expenses and attorney fees incurred in the case-in-chief and the prior administrative proceedings as well as those incurred in seeking such costs is denied.

IT IS SO ORDERED.