James L. CHRISTENSEN, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 91–573 MMS.

United States District Court,
D. Delaware.

March 10, 1993.

David H. Williams, of Morris, James, Hitchens & Williams, Wilmington, DE, for plaintiff.

William C. Carpenter, Jr., U.S. Atty., and Mary McDonough, Asst. U.S. Atty., Dept. of Justice, Wilmington, DE, Charles H. Keen, U.S. Dept. of Justice, Washington, DC, for defendant.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

Plaintiff, James L. Christensen, has moved to recover costs and attorney's fees from the defendant, the United States of America, pursuant to 26 U.S.C. § 7430 (1988) and Rule 54 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (1992). For the reasons which follow, the plaintiff's motion will be granted.

### I.

The parties stipulated to many of the facts in a pretrial order which was to control at trial on the substantive merits of the litigation. The necessity for that trial was obviated when the government agreed that plaintiff was entitled to a refund and the government abandoned efforts to collect additional sums allegedly due from the plaintiff taxpayer. Those facts adopted *in toto* are:

1. Namco was incorporated in Colorado in January, 1982. Namco initiated its construction business in 1982 and ceased to function in 1983. Christensen was President of Namco.

2. The IRS determined that Namco paid its employees a total of $424,035.01 in wages, and that Namco failed to withhold from such wages total employee taxes of $119,661.21.

3. In 1986, the IRS assessed a 100 percent penalty in the amount of $91,946 against Christensen contending that Christensen is a responsible person for taxes withheld from the wages of Namco employees for the period January 1, 1982 through September 30, 1983.

4. Christensen had significant control over Namco's finances, and thus if Namco had employees, and paid such employees wages, Christensen was responsible for collecting, accounting for, and paying over federal income taxes and social security taxes required to be withheld from such wages.

5. As a result of the assessment against Christensen, the IRS applied overpayments which would have otherwise been paid to Christensen and his wife with respect to their individual joint income tax returns in the total amount of $3,087.40. Christensen filed a claim for refund of the $3,087.40. The IRS did not take action on the claim for refund and Christensen then filed this suit to recover the $3,087.40.

Docket Item ("D.I.") 14 at 2–3.[1]

Plaintiff filed suit on October 17, 1991. D.I. 1. On September 10, 1992, after answer, counterclaim, discovery and a pretrial conference, and establishment of a September 22, 1992, trial date, the United States conceded the case. D.I. 27 at 1. A stipulation of dismissal was filed on September 14, 1992, which provided for a refund of $4,837.40. D.I. 24. Plaintiff, however, reserved his right to file for costs and attorney's fees. *Id.*

1. Plaintiff's brief in this matter states that $4,837.40 had been withheld from the Christensen's joint income tax returns. D.I. 25 at 2–3. As will be discussed, the IRS eventually conceded the case and refunded $4,837.40. D.I. 24. The precise amount of the withholding does not affect the analysis.

On September 22, 1992, plaintiff filed this motion for costs of $238.40 and attorney's fees of $10,741.69. D.I. 25 at Exhibits A and E.[2]

## II.

In response to plaintiff's motion, the defendant makes two arguments. First, the defendant argues that the plaintiff failed to exhaust his administrative remedies. Second, defendant argues that plaintiff has not shown that he was the "prevailing party", which Congress has required as a predicate to recovery of attorney's fees and costs under § 7430. For the reasons which follow, this Court finds neither argument persuasive.

### A. Exhaustion of Administrative Remedies

Subsection (b) of § 7430 provides that "A judgment for reasonable litigation costs shall not be awarded.... in any court proceeding unless the court determines that the prevailing party has exhausted the administrative remedies available to such party within the Internal Revenue Service." 26 U.S.C. § 7430(b)(1). In this case, defendant has argued that plaintiff failed to exhaust his administrative remedies by not requesting an "Appeals office conference" as instructed on the letter he was sent. The record does not reflect an "Appeals office conference" was ever held. The absence of such a conference does not, however, automatically warrant a finding of a failure to exhaust administrative remedies.

The IRS regulations explain when administrative remedies have not been exhausted:

A party has not exhausted its administrative remedies available within the Internal Revenue Service ... unless—

.    .    .    .    .

(ii) If no Appeals conference is granted, the party, prior to ... the issuance of a statutory notice of disallowance in the case of a civil action for refund in a court of the United States—

(A) Requests an Appeals office conference in accordance with §§ 601.105 and 601.106 of the Statement of Procedural Rules;

(B) Files a written protest if a written protest is required to obtain an Appeals office conference; and

(C) Agrees under section 6501(c)(4) to extend the time for an assessment of tax if necessary to provide the Appeals office with a reasonable time period to consider the tax matter.

26 C.F.R. § 301.7430–1(b) (1992). The IRS does not argue that no request was made. Instead it urges "plaintiff never requested an Appeals conference as called for by applicable Treasury regulations." D.I. 27 at 6.[3]

■ The IRS has not made clear the factual predicate which would indicate the sort of response required of the plaintiff. When a taxpayer need only make an oral "request", and when a taxpayer must file a written "protest", depends upon the particular circumstances of the taxpayer's case. *See generally,* I.R.S. Publication 556, Examination of Returns Appeal Rights, and Claims for Refund (1991) (explaining when written protest is, or is not, required). Under the terms of section (ii)(A) of this regulation, a taxpayer will not exhaust his administrative remedies unless he "[r]equests an Appeals office conference in accordance with §§ 601.105 and 601.106 of the Statement of Procedural Rules". This requirement applies to all taxpayer responses. Section (ii)(B), however, is not as broad as subsection (ii)(A) and requires the taxpayer "[f]iles a written protest *if a written protest is required* to obtain an Appeals office conference...." (Emphasis added). *See also* 26 C.F.R. § 601.106(b) (de-

---

**2.** Plaintiff's motion includes a request for the Court to determine that the statutory rate of $75 per hour be increased by 28.4% to $96.30 per hour due to an increase in the cost of living as provided for in 26 U.S.C. § 7430(c)(1)(B)(iii). Because the plaintiff has shown the applicable increase in the cost of living, D.I. 25 at Exhibit B, the Court establishes the hourly rate at $96.30.

**3.** It is clear that some response from the taxpayer is required after the receipt of a thirty day letter. *See Lawler v. United States,* 16 Cl.Ct. 53, 57–58 (1988) (finding plaintiff who had made no request to IRS had failed to exhaust administrative remedies).

scribing taxpayer's right to an appeal after a request and "a written protest when required").

Elsewhere, the regulations describe when a written protest is required versus when an oral request suffices. "An oral request is sufficient to obtain Appeals consideration in ... all office interview or correspondence examination cases.... No written protest or brief statement of disputed issues is required." 26 C.F.R. § 601.106(a)(1)(iii)(a). *See also* 26 C.F.R. § 601.105(d)(2)(i) (stating no written submission required "in office interview and correspondence cases."); 26 C.F.R. § 601.105(c)(1)(i) and (ii) (same). On the other hand, written protests are required if the amount in controversy exceeds $10,000 in a field examination case. "A written protest is required to obtain Appeals consideration in a field examination case if the total amount of proposed additional tax ... exceeds $10,000 for any taxable period." 26 C.F.R. § 601.106(a)(1)(iii)(c). *See also* § 601.105(d)(2)(iii) (requiring written protest if amount of proposed tax exceeds $10,000); 26 C.F.R. § 601.105(c)(2)(iv) (same).

■ Because in plaintiff's case the disputed amount was $91,946.89, if the letter from the IRS was written pursuant to a field examination, a written protest was required. If, on the other hand, the letter was written pursuant to an office examination, or a correspondence examination, a written protest would not be required. Plaintiff appears to have satisfied the requirement that an oral request be made since, in his subsequent letter, plaintiff explained "I would like to acknowledge that I have attempted to contact you several times during the last week. I have left messages almost daily and you have returned my request only once. I have requested to meet with you through a Mr. Joe Smith...." D.I. 27 at Exhibit B.

The sparse record does not reflect that the examination conducted by the IRS was a "field examination", § 601.105(b)(3), which would require a written protest.[4] The record also does not reflect that the IRS conducted an "office examination", § 601.105(b)(2), or a "correspondence examination", § 601.105(b)(2)(i), both requiring only an oral request which plaintiff apparently satisfied.[5] Indeed, the only substantive comments which reveal anything about the merits of the IRS's position appear to have been written after an interview at the IRS's office with a former associate of the plaintiff.[6] If anything, this record leads to the conclusion that an office examination occurred.

■ Because a taxpayer need not file a written protest after an office or correspondence examination, and the IRS has failed to provide of record any information to establish that a written protest was required, the IRS has offered no support for its argument that plaintiff failed to exhaust his administrative remedies.[7] For this reason, the Court

4. The regulations define "field examination" by stating, "(3) Field Examination. Certain returns are examined by field examination which involves an examination of the taxpayer's books and records on the taxpayer's premises." 26 C.F.R. § 601.105(b)(3).

5. The regulation defining these terms states:
(2) Office Examination—

(ii) Examinations at district office. Certain returns are examined at district offices by office examination techniques. These returns include some business returns, besides the full range of nonbusiness individual income tax returns. Office examinations are conducted primarily by the interview method. Examinations are conducted by correspondence only when warranted by the nature of the questionable items and by the convenience and characteristics of the taxpayer. In a correspondence examination, the taxpayer is asked to explain or send supporting evidence by mail. In an office interview examination, the taxpayer is asked to come to the district director's office for an interview and to bring certain records in support of the return.... If it develops that a field examination is necessary, the examiner may conduct such examination.
26 C.F.R. § 601.105(b)(2)(ii).

6. The entry for August 21, 1984 states "Scanlon in....", followed by notes concerning Namco.

7. While some case law does appear to place the burden upon the plaintiff to show exhaustion of administrative remedies, in such cases courts have had before them a sufficient factual record to determine which administrative remedies were available to the taxpayer and how those remedies could be attained. *See, e.g., Kenlin Industries, Inc. v. United States*, 927 F.2d 782, 787 (4th Cir.1991). In this case, if the IRS had submitted a factual record which made clear the procedures the taxpayer should have followed,

will not find that plaintiff failed to exhaust his administrative remedies.

■ Even if a written protest were required, plaintiff has substantially complied with the instructions he was given. As guidance as to what suffices as a "written protest", the regulations state "Instructions for preparation of written protests are sent to the taxpayer with the transmittal (30–day) letter." 26 C.F.R. § 601.105(d)(2)(iv).[8] The IRS argues plaintiff's letter response to the instructions was deficient in that "[1] The letter did *not* request an Appeals office conference. [2] No facts alleged in plaintiff's letter were declared to be true under penalty of perjury. [3] There was no mention of the tax periods in dispute, [4] nor was there any itemized schedule of any unagreed [sic] findings. [5] Moreover there is no statement outlining the law upon which plaintiff may have relied." D.I. 27 at 6 (brackets added). Plaintiff has not disputed the nature of the instructions, but argues instead that substantial compliance occurred.

As plaintiff points out, while it did not use the term "Appeals office conference", the letter did request a meeting. The letter did mention the "the latter part of 1983 and 1984" as the tax period in dispute. Although the letter may not have contained an "itemized schedule", it did state that plaintiff disagreed with the finding of a $91,946.89 tax assessment against a business which operated for less than nine months. The instruc-

tions did not require a "statement outlining the law upon which plaintiff may have relied", but instead required "a statement of law *or other authority*". (emphasis added). The plaintiff staked out his position by stating "I am very sure that there was [sic] no employment taxes due because there were no employees especially through the later part of 1983 and 1984." While this statement does not contain any legal authority, the Court is satisfied that the plaintiff made his position clear as to why he opposed the assessment.

■ In short, the letter stated the plaintiff's opposition, his reasons for opposition and notified the IRS that a meeting has been requested. The plaintiff's letter reflects a good faith attempt to reach the appropriate IRS agent well within the thirty day limit. The letter itself apparently followed up repeated unreturned phone calls. While all the other requirements are arguably in the letter, plaintiff's letter clearly lacks a signed declaration that the letter was true under penalties of perjury. Having complied with all the other instructions, the issue becomes whether the failure to include a signed penalty of perjury declaration in the circumstances of this case constitutes compliance sufficient to overcome a failure to exhaust administrative remedies defense.

Substantial compliance has been recognized as a matter of tax law.[9] As the Tax Court has explained:

> This may be done by adding to the protest the following signed declaration:
>   'Under penalties of perjury, I declare that I have examined the statement of facts presented in this protest and in any accompanying schedules and statements, and, to the best of my knowledge and belief, they are true, correct, and complete.'
> In addition, the IRS letter identifies Bruce Mason as the contact person to whom plaintiff did address his subsequent letter at the address indicated by the IRS letter.

---

the burden would then be on the taxpayer to show those procedures were followed and the available remedies were exhausted.

8. The instructions received by plaintiff read as follows:
> If a written protest is required it should be submitted in duplicate within the 30–day period (or sixty day period as the case may be) granted in this letter and should contain:
> 1. A statement that you want a hearing;
> 2. Your name and address;
> 3. The date and symbols from this letter;
> 4. The tax periods or years involved;
> 5. An itemized schedule of the findings with which you do not agree;
> 6. A statement of facts supporting your position in any contested factual issues;
> 7. A statement outlining the law or other authority on which you rely.
> A statement of facts (item 6) must be declared true and under penalties of perjury.

9. While the procedural regulations referring to the instructions at issue trace their authority to 5 U.S.C. §§ 301, 552, the regulation governing exhaustion of administrative remedies has been issued under 26 U.S.C. § 7430. It is this section of the Internal Revenue Code, with its requirement that the taxpayer and the IRS attempt to resolve disputes without litigation, under which the Court analyzes substantial compliance.

The Commissioner 'may insist upon full compliance with his regulations' when the regulatory requirements relate to the substance or essence of the statute, but we have held that substantial compliance with regulatory requirements may suffice when such requirements are procedural and when the essential statutory purposes have been fulfilled.

*American Air Filter Co. v. Commissioner,* 81 T.C. 709, 719 (1983) (citations omitted). *See also Bond v. Commissioner,* 100 T.C. No. 4 (Jan. 19, 1993) (because taxpayers "met all the elements required to establish the substance or essence of a charitable contribution, but merely failed to obtain and attach to their return a separate written appraisal containing the information specified in respondent's regulations", a denial of the charitable contribution "is not warranted or justified.") Several United States Court of Appeals have addressed the doctrine when considering a taxpayer's deficiencies in making an election under the tax code. *See, e.g., Prussner v. United States,* 896 F.2d 218, 224 (7th Cir. 1990); *Fischer Indus., Inc. v. Commissioner,* 843 F.2d 224, 226 (6th Cir.1988); *Atlantic Veneer Corp. v. Commissioner,* 812 F.2d 158, 161 (4th Cir.1987); *Young v. Commissioner,* 783 F.2d 1201, 1205 (5th Cir.1986); *Knight–Ridder Newspapers, Inc. v. United States,* 743 F.2d 781, 794–97 (11th Cir.1984). *Cf. Credit Life Ins. Co. v. United States,* 948 F.2d 723, 726–28 (Fed.Cir.1991) (no substantial compliance when debt not properly claimed as deduction on pertinent return and therefore not presumptively worthless under the regulations).

Here, the statute appears aimed at allowing the IRS and a taxpayer to settle disputes without resort to the courts. This "essential statutory purpose" was fulfilled when plaintiff notified the IRS of his disagreement, albeit in a slightly deficient form. Moreover, the IRS does not now contend there were any factual inaccuracies in the letter. Thus, the IRS, by relying upon the penalty of perjury clause, is reduced to the position of relying upon a supertechnical defect to avoid attorney's fees and costs. Under this peculiar factual scenario, the Court holds there has been substantial compliance with the instructions.

For these reasons, while this doctrine has previously been applied to substantive tax issues arising under the Internal Revenue Code, I find its application has a place in the administrative procedures of the Internal Revenue Service when those procedures, such as the instructions here, have not been included among the regulations themselves. In light of these circumstances, the Court is unwilling to deny attorney's fees and costs as awarded by statute on the ground that plaintiff did not precisely comply with the IRS's instructions. Even if plaintiff were required to file a written protest, the Court will not find that plaintiff has failed to exhaust his administrative remedies.

**B.  "Prevailing Party"**

■  Plaintiff has filed this motion for costs and attorney's fees under 26 U.S.C. § 7430 which reads, in part,

> In any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or settlement for—
>
> (1) reasonable administrative costs incurred in connection with such administrative proceeding within the Internal Revenue Service, and
>
> (2) reasonable litigation costs incurred in connection with such court proceeding.

26 U.S.C. § 7430(a).[10]  The fact that the government conceded does not necessarily mean plaintiff is a prevailing party under the statute. The statute defines "prevailing party" as

> any party in any proceeding to which subsection (a) applies ...

---

10. Plaintiff has also relied upon 28 U.S.C. §§ 1920 and 1924 (1988). Section 1920 lists the specific costs which the Court may assess and section 1924 provides for verification by affidavit of those costs. Defendant has not disputed the calculation nor amount of costs claimed by plaintiff. Local Rule 54, also relied upon by plaintiff, elaborates upon this statutory structure.

(i) which establishes that the position of the United States in the proceeding was not substantially justified,

(ii) which—

(I) has substantially prevailed with respect to the amount in controversy, or

(II) has substantially prevailed with respect to the most significant issue or set of issues presented, and

(iii) which meets the requirements of the 1st sentence of section 2412(d)(1)(b) of title 28, United States Code (as in effect on October 22, 1986) except to the extent differing procedures are established by rule of court and meets the requirements of section 2412(d)(2)(B) of such title 28 (as so in effect).

26 U.S.C. § 7430(c)(4). While it has not been disputed that plaintiff "substantially prevailed" when the government conceded the case, the parties do dispute whether the position of the United States was "substantially justified." The burden of showing that the United States was not "substantially justified" rests with the plaintiff. 26 U.S.C. § 7430(c)(4)(A)(i); *Fitzgerald v. United States,* 789 F.Supp. 177, 178 (E.D.Pa.1992) (finding plaintiff had made sufficient showing); *United States v. Sam Ellis Stores, Inc.,* 768 F.Supp. 286, 288 (S.D.Cal.1991); *Feinberg v. United States,* 628 F.Supp. 12, 15 (M.D.Pa.1985) (finding burden on plaintiff to show government position was "unreasonable" before 1986 Amendment replaced "unreasonable" with "not substantially justified.").

While the United States Supreme Court has not addressed what constitutes "a substantially justified" position in the context of 26 U.S.C. § 7430(c), it has interpreted the phrase as used in the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A). *Pierce v. Underwood,* 487 U.S. 552, 563, 108 S.Ct. 2541, 2549, 101 L.Ed.2d 490 (1988). Courts have used the *Pierce* decision as guidance in the context of 26 U.S.C. § 7430(c). *See Comer Family Equity Pure Trust v. Commis-*

*sioner,* 958 F.2d 136, 139–140 (6th Cir.1992) (per curiam); *United States v. One 1984 Ford Van,* 873 F.2d 1281, 1282 (9th Cir.1989); *United States v. Sam Ellis Stores, Inc.,* 768 F.Supp. at 288. *Cf. Kenagy v. United States,* 942 F.2d 459, 464 (8th Cir.1991) (stating "[t]he 'not substantially justified' standard was copied by Congress from the EAJA provisions. Thus where wording is consistent, courts read the EAJA and § 7430 in harmony", but not applying *Pierce); Bowles v. United States,* 947 F.2d 91, 94 (4th Cir.1991) (equating "substantially unjustified" in the EAJA with the provisions of § 7430, before § 7430 was amended to read "substantially unjustified"). *See also, Rickel v. Commissioner,* .900 F.2d 655, 665 (3d Cir.1990) (citing *Pierce* and cases which equate the statutes with apparent approval). Based upon this case law, this Court finds that the term "substantially justified" as used in the § 7430 should be applied as the identical term applies in the EAJA. For this reason, the Supreme Court's opinion in *Pierce* will inform the analysis.

In *Pierce,* the Supreme Court defined "substantially justified" as " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce,* 487 U.S. at 565, 108 S.Ct. at 2550. The issue before this Court is whether or not, based on the exhibits submitted by the parties, the IRS had information before it which would satisfy a reasonable person to go forward with the proceedings for which costs and fees are sought.

█ Plaintiff has submitted what appears to be the two supporting documents which the IRS has to show its position was substantially justified. The papers consist of seven pages of an "Investigation History", which reference dates between April 13, 1983, and August 22, 1983, and a single page entitled "Section 6020(b) Action Sheet", which appears to have been acted on in September and October of 1983. D.I. 26 at Exhibits 3 and 4.[11]

---

11. The IRS makes two peripheral arguments in its brief. First, it argues that certain information has been lost. D.I. 27 at 8. If the Court had been presented with evidence as to what had been lost, it may have considered it. Instead, the IRS states that "it is true that all the backup evidence for the assessment cannot be found". *Id.* The Court cannot consider something about which it knows nothing. Second, the IRS states that there is no evidence that it acted in bad

The papers do not state why an investigation of the plaintiff began. Other than indicating a rather frustrating attempt to track plaintiff down, the only substance in the papers are phone calls and one interview with an associate of the plaintiff's named Mike Scanlon. These contacts, occurring on August 2, 1984, July 13, 1983, and August 21, 1984, appear to have disclosed no more than Mr. Scanlon's role in Namco, and his impression of plaintiff's role.[12] The only reference to the wages appears in the single page entitled "Section 6020(b) Action Sheet". On that single page someone has written "actual payroll figures secured from the taxpayer's former bookkeeper". There are no payroll figures in the record.

Taken together, this evidence does not show that the position of the IRS was "justified to a degree that could satisfy a reasonable person." *Pierce,* 487 U.S. at 565, 108 S.Ct. at 2550. For this reason, the Court finds that the position of the United States was not substantially justified under the terms of § 7430 and an award of attorney's fees and costs to the plaintiff is appropriate.

### IV.

For the forgoing reasons, plaintiff's motion for attorney's fees and costs will be granted. An appropriate order will issue.

faith. *Id.* Plaintiff has not here suggested the IRS acted in bad faith, and while the presence of bad faith would have bolstered plaintiff's motion, the absence of it would seem to go without saying by the IRS.

**12.** At the interview, one transaction was discussed concerning a contract for carpentry or carpeting work, but no connection to Namco's payment of wages to its employees appears.