**In re Romuald Joseph KLAUER,**
**Debtor.**

**Romuald Joseph Klauer, Plaintiff,**

**v.**

**United States of America, Defendant.**

**Bankruptcy No. 3:03–BK–12989.**
**Adversary No. 3:05–ap–00129.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Nov. 27, 2006.

Keith H. Johnson, Louis A. Frashuer, Johnson and Johnson P.A., Jacksonville, FL, for Debtor.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This Proceeding is before the Court upon Romuald Klauer's Motion for Administrative and Litigation Costs and Fees. After a hearing held on August 22, 2006, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. On December 19, 2003, Romuald Klauer ("Plaintiff") filed a petition for relief under Chapter 7 of the Bankruptcy Code. (Def.'s Ex. 11.)

2. On March 23, 2004, the IRS filed a proof of claim for $1,108,294.69 in unpaid federal income taxes for 1978, 1979, 1981, 1982, 1984, and 1990 of which $31,466.34 was classified as secured, $325,246.09 was classified unsecured priority, and $751,582.26 was classified general unsecured. (Def.'s Ex. 7.)

3. On April 8, 2004, Plaintiff received a discharge. (Def.'s Ex. 11.)

4. On July 30, 2004, Plaintiff asked the IRS Insolvency Unit, for assurance that the taxes had been discharged. (Pl.'s Ex. 2.) In a letter dated August 5, 2004, Insolvency Specialist Ruth Grim declined to give Plaintiff such an assurance and noted that the tax liabilities were excepted from discharge. (Pl.'s Ex. 3.) Plaintiff request-

ed additional information from the IRS, and in a letter dated October 13, 2004, an IRS Insolvency employee advised him that he could file a complaint in the bankruptcy court seeking a determination as to whether the taxes were discharged. (Pl.'s Exs. 4 & 6.)

5. On December 9, 2004, the IRS issued a Notice of Intent to Levy with respect to tax years 1978, 1979, 1981, 1984 and 1990. (Pl.'s Ex. 9, at "Ex. 1.")

6. Plaintiff subsequently requested an administrative due process hearing. (Pl's Ex. 9). Plaintiff contended that his 1980 tax liabilities had been improperly assessed in 1990 as a result of Tax Court litigation regarding the allowance of a loss carryback from tax year 1983 to 1980, and that any attempt to collect that tax would be barred by the relevant statute of limitations. Plaintiff also contended that his Chapter 7 discharge relieved him of personal liability for the unpaid taxes of the other years at issue.

7. On December 23, 2004, Plaintiff filed a Freedom of Information Act (FOIA) request. (Pl.'s Ex. 8.) In a letter dated May 6, 2005, the IRS advised Plaintiff that the filing of the adversary proceeding on April 26, 2005, prevented the IRS from responding to the FOIA request. (Pl.'s Ex. 12)

8. Although Plaintiff requested an administrative collection due process hearing from the IRS Office of Appeals, he abandoned that approach before a hearing was held and before a determination letter could be issued. On April 26, 2005, Plaintiff filed an adversary complaint seeking a determination that the 1990 assessment was erroneous and that the taxes for tax years 1978, 1979, 1981, and 1982 were dischargeable. (Def.'s Ex. 11.) The IRS subsequently filed an Answer to the Complaint.

9. In its answer to the Complaint, the IRS stated that it lacked sufficient information to determine whether the taxes were dischargeable.

10. Due to the complicated issues involved, it is reasonable that the IRS originally interpreted Plaintiff's investment in a complex tax shelter as a willful attempt to evade tax.

11. In July 2005, the Department of Justice offered to enter into a stipulation with Plaintiff regarding the dischargeability of the taxes. Plaintiff's counsel responded to this request in October of 2005, and reserved the right to claim attorney's fees. On November 29, 2005, the judgment acknowledging the dischargeability of the years at issue was entered. (Pl.'s Ex. 15.)

12. Debtor did not file a request for administrative relief directly with the IRS District Director or with the Chief of the IRS Local Insolvency Unit. (Tr. 56.)

13. At the time of filing his petition, Plaintiff listed total assets of $1,951,196.33, of which $1,872,912.33 was in his John Hancock IRA Annuity Rollover Account. (Pl's. Ex. 17, pg. 4). As part of his Motion for Reasonable Administrative and Litigation Costs and Fees, Plaintiff executed an affidavit indicating that his net worth was under $2,000,000.00.

14. In his Amended Affidavit in Support of Motion for Administrative and Litigation Costs and Fees, Plaintiff requests $28,178.22. (Tr. 55.) In the original application filed on December 12, 2005, Plaintiff asked for $11,924.98 in fees and costs. (Tr. 52.)

## CONCLUSIONS OF LAW

The issue before the Court for its determination is whether Plaintiff is entitled to obtain administrative and litigation fees

and costs pursuant to Internal Revenue Code § 7430.[1]

Internal Revenue Code § 7430, permits taxpayers to obtain administrative and litigation fees and costs under certain limited circumstances. Congress enacted § 7430 "to deter abusive actions or overreaching by the [IRS] and to enable taxpayers to vindicate their rights regardless of their economic circumstances." *Weiss v. Commissioner of Internal Revenue*, 88 T.C. 1036, 1041, 1987 WL 49313 (1987) (citing H.R.Rep. No. 97–404, 97th Cong., 1st Sess., at 11 (1981)).

 Since § 7430 constitutes a waiver of the government's sovereign immunity, it must be strictly construed. *Ardestani v. Immigration and Naturalization Service*, 502 U.S. 129, 137, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991) Accordingly, a party seeking attorney's fees and costs under § 7430 must strictly comply with the statutory requirements.

### *Exhaustion of Administrative Remedies*

 The Eleventh Circuit has held that to be eligible for an award of attorney's fees and administrative expenses under § 7430, three requirements must be satisfied. *Cooper v. U.S.*, 60 F.3d 1529, 1531 (11th Cir.1995). "First, a claimant must have exhausted all administrative remedies available within the IRS before commencing a civil proceeding." *§ 7430(b)(1)*. Second, the claimant must prove that he is a "prevailing party." *§§ 7430(a)* and *7430(c)(4)(A)*. Finally, a claimant must show that the requested award constitutes reasonable litigation or administrative costs. *§§ 7430(a)(1), 7430(a)(2), 7430(c)(1)* and *7430(c)(2)*. *Id.*

Specifically, § 7430(b)(1) states:

**Requirement that administrative remedies be exhausted.**—A judgment for reasonable litigation costs shall not be awarded under subsection (a) in any court proceeding unless the court determines that the prevailing party has exhausted the administrative remedies available to such party within the Internal Revenue Service. I.R.C. § 7430(b)(1).

Additionally, Treas. Reg. § 301.7430–1(d), states:

**(d) Actions involving summonses, levies, liens, jeopardy and termination assessments, etc.** (1) A party has not exhausted the administrative remedies available within the Internal Revenue Service with respect to a matter other than one to which paragraph (b) or (c) of this section applies (including summonses, levies, liens, and jeopardy and termination assessments) unless, *prior to filing an action in a court of the United States* (including the Tax Court and the Court of Federal Claims)—

(i) The party submits to the *district director* of the district having jurisdiction over the dispute a written claim for relief reciting facts and circumstances sufficient to show the nature of the relief requested and that the party is entitled to such relief; and

(ii) The district director has denied the claim for relief in writing or failed to act on the claim within a reasonable period after such claim is received by the district director.

(Emphasis supplied.)

Regardless of the "unfairness" involved, the Eleventh Circuit requires that administrative remedies be exhausted. *In re Brickell Inv. Corp.*, 922 F.2d 696, 703 (11th Cir.1991); *Ewing & Thomas, P.A., v. Heye*, 803 F.2d 613, 616 (11th Cir.1986). Similar to the instant case, the IRS in

---

1. As stated in his brief, Plaintiff is pursuing his claim solely under § 7430. (Pl.'s Br. 6).

*Brickell,* contended that the debtors were precluded from receiving an award of costs and fees due to the fact that they failed to exhaust their administrative remedies prior to filing for bankruptcy. *Brickell,* 922 F.2d at 703. In reaching its holding, the Eleventh Circuit stated that, "[u]nder the regulations, the appropriate procedure for challenging a wrongful levy or seizure would have been to submit a written claim for relief to the District Director of the I.R.S. *See 26 U.S.C. § 7430(b)(1).* At the end of five days, the debtors are considered to have exhausted their administrative remedies. *See Treas. Reg. § 301.7430–1(d)." Id.*

In the instant case, Plaintiff failed to file a written claim with the IRS District Director, contesting the IRS's decision to initiate a collection action for the taxes excepted from his discharge. Instead, Plaintiff asked a bankruptcy insolvency specialist to comment on the dischargeability question and filed requests for a collection due process hearing with the IRS Office of Appeals.[2] The IRS maintains that those requests alone do not satisfy the regulatory requirements for exhausting administrative remedies before filing suit. *Lawler v. United States,* 16 Cl.Ct. 53, 56–57 (1988). The Court agrees with the position of the IRS. The Eleventh Circuit has clearly stated that the appropriate procedure for challenging a wrongful lien or seizure is to submit a written claim for relief to the District Director of the IRS. *Brickell,* 922 F.2d at 703. Additionally, Treas. Reg. § 301.7430–1(d), requires a written claim to be furnished to the IRS District Director. Therefore, the Court finds Plaintiff's actions were not sufficient to exhaust his administrative remedies.

As a plaintiff must meet all three requirements under § 7430 to prevail, there is no need for the Court to reach a determination as to whether Plaintiff meets the final two requirements of § 7430.

**"Substantial Justification" within the meaning of § 7430(c)(4)(B)(I)**

Although the Court has already determined that Plaintiff is not a prevailing party within the meaning of § 7430(b)(1), as he failed to exhaust all his administrative remedies, the Court will still address the issue of whether the IRS was substantially justified in its position.

■ Congress has defined the definition of "position of the United States" in § 7430(c)(7) to mean:[3]

(A) the position taken by the United States in a judicial proceeding ..., and

(B) the position taken in an administrative proceeding ... as of the earlier of—

(i) the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals, or

(ii) the date of the notice of deficiency.

The IRS maintains that the only provision of § 7430(c)(7) that applies is the provision regarding the position taken by the United States in a judicial proceeding. In support of its position, the IRS points out that (1) Plaintiff failed to wait for a decision from the IRS Appeals Office and (2) the notice of deficiency date is not applica-

---

**2.** Mr. Klauer did not wait for the outcome of his collection due process appeal before filing suit.

**3.** Plaintiff erroneously asserts that the position of the United States should be determined by Treas. Reg. § 301–7430–8(b)(3).

However, § 301–7430–8(b)(3) deals with situations in which a taxpayer has asserted an administrative claim for relief *from a willful violation* of the permanent injunction imposed by 11 U.S.C. § 524.

ble to an adversary proceeding seeking to quell collection based on dischargeability.

 Pursuant to § 7430(c)(4)(B), a taxpayer shall not be treated as a prevailing party, " if the United States establishes that the position of the United States in the proceeding was substantially justified." § 7430(c)(4)(B). The term "substantially justified" means "justified to a degree that could satisfy a reasonable person" or having a "reasonable basis both in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 563–65, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (defining "substantially justified" under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)). That the United States loses or concedes an issue does not establish that its position was not substantially justified. *Underwood*, 487 U.S. at 569, 108 S.Ct. 2541. As the Supreme Court stated in *Underwood*, the United States "could take a position that is substantially justified, yet lose." *Id.* Similarly, "[t]he government's decision to concede, rather than to litigate an arguable legal issue, does not in itself indicate that the government's pre-settlement position was unreasonable." *Estate of Merchant v. Comm'r*, 947 F.2d 1390, 1395 (9th Cir. 1991).

The IRS Insolvency Unit did issue a determination letter treating the liabilities as excepted from discharge. However, as the IRS persuasively argues, Plaintiff's investment in a complex tax shelter could reasonably be interpreted as a willful attempt to evade tax. Additionally, both parties have recognized the complexities of the issues Plaintiff's case presented. Further, as stated above, merely because the United States concedes a position does not mean that the position was not substantial-

ly justified. Although Plaintiff sets forth various reasons as to why the IRS' position was not substantially justified, the Court finds that due to the complexities of the case, the IRS's position, whether measured from § 7430(c)(7)(A) [4] or § 7430(c)(7)(B), was justified to a degree that would satisfy a reasonable person. Therefore, the Court finds the IRS was substantially justified in its position.

### CONCLUSION

The Court will deny Plaintiff's Motion to Award Attorneys' Fees and Costs based upon (1) Plaintiff's failure to exhaust his administrative remedies and (2) because the IRS' position was substantially justified. The Court will enter a separate order, consistent with these Findings of Fact and Conclusions of Law.

---

**4.** In regards to an analysis of § 7430(c)(7)(A), the Court notes that from the date the complaint was filed until a formal concession was made, took merely a few months. In light of the complexity of the case and the amount of the claim, the amount of time involved does not appear unreasonable.