T.C. Memo. 1997-127


UNITED STATES TAX COURT


JOHN J. BURKE AND VIVIAN BURKE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18772-93.                    Filed March 11, 1997.


<u>Vincent R. Barrella</u>, for petitioner Vivian Burke.

<u>Catherine R. Chastanet</u> and <u>Mark A. Ericson</u>, for respondent.


MEMORANDUM OPINION


RUWE, <u>Judge</u>:  In <u>Burke v. Commissioner</u>, T.C. Memo. 1995-608, we sustained respondent's determination of Federal income tax deficiencies and additions to tax for fraud, delinquent filing, and substantial understatement against petitioner John J. Burke for the taxable years 1985, 1986, and 1987.  We also found that

petitioner Vivian Burke did not tacitly consent to the filing of joint Federal income tax returns and, therefore, was not jointly and severally liable for the taxes in issue. We now consider petitioner[1] Vivian Burke's Motion for an Award of Litigation Costs pursuant to section 7430[2] and Rule 231.

## Background[3]

In May 1987, the Suffolk County District Attorney's Office indicted John Burke on two counts of grand larceny for embezzling more than $1.2 million in insurance premiums from U.S. Life Insurance Co. between 1985 and 1987. Pursuant to a plea agreement, Mr. Burke pled guilty to Grand Larceny 4, a felony, for his failure to remit sales taxes, which were owing from a restaurant owned by Mr. Burke, to the New York State Department of Taxation and Finance.

---

[1] Hereinafter, all references to petitioner are to petitioner Vivian Burke.

[2] The petition in this case was filed on Aug. 30, 1993; therefore, the motion has been considered under sec. 7430 as amended by sec. 6239(a) of the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3342, 3743-3744, effective for all civil tax proceedings commenced after Nov. 10, 1988. All Rule references are to the Tax Court Rules of Practice and Procedure.

[3] Neither party has requested an evidentiary hearing regarding the Motion for an Award of Litigation Costs. The relevant facts are taken from the parties' memoranda and our opinion in Burke v. Commissioner, T.C. Memo. 1995-608.

On March 29, 1991, Mr. Burke filed untimely Federal income tax returns for 1985, 1986, and 1987. The returns reported tax liabilities of $34,262, $4,359, and $4,557, respectively. The returns also purported to be joint returns, and a signature purporting to be that of petitioner appeared on each return. Petitioner, individually, was not required to file a return of her own for any of the years in issue. At the time Mr. Burke filed the returns, petitioner was aware of the financial and legal problems Mr. Burke had encountered during the taxable years in issue. The returns in question were filed long after their due dates, at which time petitioners were experiencing severe marital difficulties.

On June 21, 1991, respondent sent a Letter 904(DO) to petitioners at their home address in Setauket, New York. The letter informed petitioners that their 1986 and 1987 Federal income tax returns were under investigation and requested information regarding a claimed theft loss and a small business corporation (S corporation) loss, as well as copies of petitioners' 1985 and 1988 Federal income tax returns.

In a letter dated June 28, 1991, Kenneth S. Silver, the accountant for two insurance agencies owned by Mr. Burke (the Burke Insurance Agencies), provided respondent with a Form 2848 (Power of Attorney and Declaration of Representative) and confirmed a meeting with respondent for July 31, 1991. The power

of attorney authorized Mr. Silver to represent both Mr. Burke and petitioner in respondent's audit.

Mr. Silver and respondent's examining agents met on July 31, 1991, and February 11, 1992, and had several telephone conversations prior to May 1, 1992. There is no evidence of any discussion regarding the purported joint filing status of the returns.

During the audit process, respondent served summonses upon various banks where petitioners had their business and personal accounts. Pursuant to section 7609(a)(2), respondent sent a certified letter to the account holder(s) within 3 business days of the issuance of the summonses to notify the account holder(s) of the existence of the summonses.

On May 15, 1992, respondent issued to petitioners a Letter 950 (30-day letter),[4] which proposed the following adjustments:

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) |
|------|-----------|----------------------------------|
| 1985 | $14,752 | $4,523 |
| 1986 | 142,690 | 35,781 |
| 1987 | 476 | 233 |

Respondent disallowed deductions for losses allegedly incurred by Ard Rhei, Inc., an S corporation owned by Mr. Burke, and deductions for losses resulting from the alleged embezzlement of

_____

[4]Respondent also sent a copy of the 30-day letter to Mr. Silver.

funds from the Burke Insurance Agencies by several of Mr. Burke's employees. Respondent also determined an addition to tax for delinquent filing of the returns in issue.

The 30-day letter also stated as follows:

> IF YOU DO NOT AGREE and wish a conference with the Office of the Regional Director of Appeals, you MUST LET US KNOW within 30 days.
>
> * * * * * * *
>
> An appeals officer, who has not examined your return previously, will review your case. The appeals office is independent of the district director and resolves most disputes informally and promptly.
>
> By going to the appeals office, you may avoid court costs, resolve the matter sooner, and prevent interest from compounding. * * *

On May 20, 1992, respondent received another Form 2848 Power of Attorney from Mr. Silver, which appointed Mr. Silver and Robert Nicolai, C.P.A., as petitioners' representatives for the taxable years 1985 through 1989. Both petitioners had signed this form on May 11, 1992.

On June 16, 1992, Mr. Silver informed respondent that petitioners would not be filing a protest. Neither petitioners nor Mr. Silver ever requested an Appeals Office conference with respondent.

On June 11, 1993, respondent issued a notice of deficiency, which determined deficiencies in petitioners' Federal income taxes and additions to tax as follows:[5]

| | | Additions to Tax | | |
|------|------------|----------------|------------------|-----------|
| Year | Deficiency | Sec. 6653(b)(1) | Sec. 6653(b)(2) | Sec. 6661 |
| 1985 | $38,140 | $36,201 | 50 percent of the interest due on $23,388 | $5,847 |

| | | Additions to Tax | | | |
|------|------------|----------------|-------------------|-------------------|-----------|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6653(b)(1)(A) | Sec. 6653(b)(1)(B) | Sec. 6661 |
| 1986 | $256,295 | $34,692 | $88,473 | 50 percent of the interest due on $113,605 | $28,401 |
| 1987 | 12,973 | -- | 12,791 | 50 percent of the interest due on $12,497 | 3,124 |

In addition to the adjustments contained in the 30-day letter, respondent determined that Mr. Burke had failed to report $330,615 in premium funds which he had embezzled from U.S. Life. Respondent also determined additions to tax for delinquent filing, fraud, and substantial understatement. Respondent did not issue a second 30-day letter prior to issuance of the notice of deficiency.

On August 30, 1993, Attorney Michael N. Balsamo filed the original petition in this case on behalf of both petitioners. The petition stated in several places that the returns were jointly filed:

---

[5]In her answer, respondent asserted an increased deficiency and additions to tax for 1986.

5. The facts upon which petitioners rely are as follows:

(a) <u>Petitioners filed their tax returns</u> for the 1985, 1986, and 1987 [taxable years] on or about March 28, 1991.

* * * * * * *

(d) The deficiencies herein have been asserted against Petitioner, Vivian Burke, for the sole reason that <u>she executed joint tax returns with Petitioner, John J. Burke</u>.

* * * * * * *

(i) Petitioner, Vivian Burke, is not responsible for any of the tax, interest, or penalties asserted by the Commissioner, since she is an innocent spouse as defined in Section 6013(e). In support thereof, Petitioner Vivian Burke states as follows:

1) <u>A joint return was filed by Vivian Burke and John J. Burke for each of the years at issue herein</u>, * * *

* * * * * * *

3) <u>At the time Petitioner, Vivian Burke, signed the returns at issue herein</u>, she did not know, and had no reason to know that there was such alleged substantial understatement, * * * [Emphasis added.]

On April 18, 1994, the parties were served with notice that petitioners' case was scheduled for trial at the Court's September 19, 1994, session in New York City. On May 23, 1994, Attorney Vincent R. Barrella entered an appearance on behalf of petitioner Vivian Burke. On June 29, 1994, following her initial examination of the returns in issue, petitioner informed Mr. Barrella that she had not signed the returns. On July 11, 1994,

Mr. Barrella informed respondent who requested handwriting exemplars from petitioner. On July 26 or 27, 1994, respondent received the report of the Internal Revenue Service Criminal Investigation National Forensic Laboratory, which concluded that petitioner had not signed the returns.

On July 26, 1994, petitioner filed an amended petition, which asserted that the signatures on the returns, purporting to be hers, were not those of Vivian Burke. On or about September 8, 1994, respondent conceded the addition to tax for fraud against petitioner.

A trial was conducted on September 27, 28, and 29, 1994. In Burke v. Commissioner, T.C. Memo. 1995-608, we upheld the income tax deficiencies and additions to tax determined against Mr. Burke in the notice of deficiency, as well as the increased deficiencies and additions to tax asserted by respondent in her answer. We also concluded that petitioner Vivian Burke did not tacitly consent to the filing of joint Federal income tax returns and, therefore, was not jointly and severally liable for the taxes in issue.

On February 12, 1996, petitioner filed her Motion for An Award of Litigation Costs.

## Discussion

Section 7430(a)(2) provides that a party that has prevailed in any court proceeding against the United States may recover

reasonable litigation costs.  To obtain such an award, the prevailing party must establish that:  (1) She has exhausted the administrative remedies available; (2) she has "substantially prevailed" in the controversy; (3) she satisfies certain net worth requirements; (4) the position of the United States in the proceeding was not substantially justified; (5) she has not unreasonably protracted the proceedings; and (6) the amount of the costs sought is reasonable.  Sec. 7430(b) and (c). Petitioner bears the burden of proving that she satisfies each of these requirements.  Rule 232(e).[6]

Respondent concedes that petitioner has substantially prevailed and that she satisfies the net worth requirements.

Exhaustion of Administrative Remedies

The threshold requirement imposed on a taxpayer asserting a claim pursuant to section 7430 is the exhaustion of administrative remedies before suit is filed.  Section 301.7430- 1(b)(1), Proced. & Admin. Regs., provides that where an Appeals Office conference is available, administrative remedies are exhausted only if the taxpayer (1) participated[7] in such a

---

[6]In the Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 701(b), 110 Stat. 1452, 1463 (1996), sec. 7430(c)(4) was amended to require the Government to establish that its position was substantially justified.  This amendment is effective for proceedings commenced after July 30, 1996.

[7]A taxpayer or her representative "participates" in an Appeals conference "if the party or qualified representative
(continued...)

conference prior to filing a petition, or (2) requested an Appeals Office conference and the request was denied. Cole v. Commissioner, T.C. Memo. 1996-375. This requirement aims "to preserve the role that the administrative appeals process plays in the resolution of tax disputes by requiring taxpayers to pursue such remedies prior to litigation." H. Rept. 97-404, at 13 (1981); see also Technical Explanation of Committee Amendment, 127 Cong. Rec. sec. 15594 (daily ed. Dec. 16, 1981).[8]

In the instant case, the following facts are not in dispute: On May 15, 1992, respondent issued to petitioners (and their representative, Mr. Silver) a 30-day letter, which afforded petitioners an opportunity for an Appeals conference with respondent's Office of the Regional Director of Appeals. However, neither petitioners nor their representative requested

---

[7](...continued) discloses to the Appeals office all relevant information regarding the party's tax matter to the extent such information and its relevance were known or should have been known to the party or qualified representative at the time of such conference." Sec. 301.7430-1(b)(2), Proced. & Admin. Regs.

[8]The House report also stated:

A taxpayer who actively participates in and discloses all relevant information during the administrative stages of the case will be considered to have exhausted the available administrative remedies. Failure to so participate and disclose information may be sufficient grounds for determining that the taxpayer has not exhausted administrative remedies and, therefore, is ineligible for an award of litigation costs. [H. Rept. 97-404, at 13 (1981).]

See also Minahan v. Commissioner, 88 T.C. 492, 508 (1987).

an Appeals Office conference with respondent. Petitioner now posits several arguments in an attempt to circumvent her failure to proceed to Appeals. We shall address each one in turn.

First, petitioner argues that she did not have the opportunity to exhaust her administrative remedies, because respondent's determination in the 30-day letter, which afforded petitioners the opportunity for an Appeals conference, was "entirely different" than that contained in the notice of deficiency. In the notice of deficiency, respondent determined deficiencies in petitioners' Federal income taxes that were $149,490 greater than the deficiencies determined in the 30-day letter. In the notice of deficiency, respondent determined additions to tax for delinquent filing,[9] fraud,[10] and substantial understatement as well.

Despite these additional determinations in the notice of deficiency, the fact remains that the 30-day letter asserted substantial Federal income tax deficiencies and additions to tax for the years in issue against both petitioners. These deficiencies totaled $157,918, and the additions to tax for delinquent filing totaled $40,537. Petitioner was not required

---

[9]In the 30-day letter, respondent determined an addition to tax for delinquent filing for each of the years in issue. In the notice of deficiency, respondent determined this addition to tax for 1986 only, and this amount was less than the total amount asserted for delinquent filing in the 30-day letter.

[10]As an alternative to the additions to tax for fraud, respondent determined additions to tax for negligence.

to file a Federal income tax return of her own for any year in issue. Any tax deficiencies attributable to her could only be due to a determination by respondent that she had elected to file joint returns. Thus, when the 30-day letter was sent, the central issues for petitioner Vivian Burke were whether she signed the purported joint returns, and, if not, whether she tacitly consented to their filing.[11]

Second, petitioner maintains that even if she had availed herself of the available administrative remedies, it would have been of no consequence. In discussing the importance of the exhaustion of administrative remedies requirement, the report of the House Ways and Means Committee stated that

> The committee recognizes that the exhaustion of remedies requirement may be inappropriate in some cases. For example, if a notice of deficiency is issued to a taxpayer in connection with an issue which the Internal Revenue Service has identified as one which it will litigate in all cases, then it would be inappropriate to require an administrative appeal.

---

[11]These were the central and, ultimately, decisive issues, notwithstanding that neither petitioner nor her representatives alleged that she had not filed joint returns until Mr. Barrella entered his appearance on petitioner's behalf after the case was set for trial. Prior to that time, petitioner had affirmatively alleged that she filed joint returns with Mr. Burke. Indeed, joint return filing was a requirement for petitioner to prevail on her claim that she was an innocent spouse. See sec. 6013(e)(1)(A). Petitioner has consistently maintained, even when she alleged that the returns were jointly filed, that she had no knowledge of her husband's income-producing activities. She maintained this position even after amending her petition. The amount of tax in question was never the focus of petitioner's individual position. At trial, petitioner's counsel indicated that petitioner was not interested in issues other than joint return and innocent spouse status.

> Therefore, taxpayers are required to exhaust available administrative remedies unless the court determines that, under the circumstances of the case, such requirement is unnecessary.  [H. Rept. 97-404, <u>supra</u> at 13.]

In this case, petitioner contends that respondent's position was "set in stone", and petitioners could have agreed to respondent's proposed adjustments or else proceeded to trial.  We disagree. Nothing in the record suggests that respondent would not have considered petitioner's claims had she proceeded to Appeals in 1992 and submitted relevant information regarding the joint return issue.[12]  The fact that respondent refused to concede the joint return issue after learning 2 years later that petitioner had not signed the returns does not persuade us to the contrary. By then, petitioner had affirmatively alleged in her petition that she had jointly filed the returns in question.  In light of this, it was respondent's position that petitioner had consented to her husband's filing of joint returns.

Petitioner also seeks to excuse her failure to pursue administrative remedies on the grounds that she did not learn that respondent was seeking to hold her liable for deficiencies until after the issuance of the notice of deficiency.  However, petitioners received notification from respondent that she would be conducting an examination of their Federal income tax returns.

_____

[12]Respondent conceded the addition to tax for fraud against petitioner shortly after receipt of her forensic report, which concluded that the signatures on the returns were not petitioner's.

Petitioner signed two powers of attorney granting Mr. Silver's accounting firm the authority to represent her for purposes of respondent's audit.  Moreover, through her original attorney, petitioner maintained in the petition, and until shortly before trial in this case, that the returns were jointly filed.[13]  See <u>supra</u> pp. 6-7.

Petitioner's reliance on our opinion in <u>Lomanno v. Commissioner</u>, T.C. Memo. 1994-426, granting the taxpayer's motion for an award of attorney's fees and litigation costs, is misplaced.  In <u>Lomanno</u>, we determined that the taxpayer had exhausted her administrative remedies, despite the fact that no Appeals conference was held.  However, in contrast to the instant case, the taxpayer in <u>Lomanno</u> never received a 30-day letter.  As a result, we concluded that section 301.7430-1(e), Proced. & Admin. Regs., "would allow * * * [her] to be excepted from having to participate in a prepetition appeals office conference." <u>Lomanno v. Commissioner</u>, <u>supra</u>.[14]  In addition, we found that

---

[13]Respondent is not required to question and investigate the authenticity of every return signature.  Sec. 6064 provides that "The fact that an individual's name is signed to a return, statement, or other document shall be prima facie evidence for all purposes that the return, statement, or other document was actually signed by him."

[14]Pursuant to sec. 301.7430-1(e)(2), Proced. & Admin. Regs., in the case of a petition in the Tax Court, a party's administrative remedies shall be deemed to be exhausted if:

(i) The party did not receive a notice of proposed deficiency (30-day letter) prior to the issuance of the
(continued...)

prior to the filing of the petition, the taxpayer's counsel had not turned his back on any opportunity that was afforded him to present evidence to support the taxpayer's position. Counsel made both written and oral requests to meet with the Commissioner's agents, although these were to no avail. On these facts, we held that the taxpayer had exhausted her available administrative remedies.

The instant case is also distinguishable from Phillips v. Commissioner, 88 T.C. 529 (1987), revd. 851 F.2d 1492 (D.C. Cir. 1988). In Phillips, the taxpayer failed to request consideration of his case by Appeals, despite the Commissioner's issuance of a preliminary notice informing him that he was entitled to administrative review. Nevertheless, we concluded that the taxpayer had exhausted his administrative remedies, because the issue in question did not arise until after the Commissioner had mailed the notice of deficiency.[15] Thus, there was no possible opportunity for an administrative Appeals conference regarding that issue. Id. at 532. Subsequent to the docketing of the

---

[14](...continued)
statutory notice and the failure to receive such notice was not due to actions of the party * * *; and

    (ii) The party does not refuse to participate in an Appeals office conference while the case is in docketed status.

    [15]The issue concerned the validity of a joint filing status election made on a return filed after the notice of deficiency for the same year had been mailed. See Phillips v. Commissioner, 86 T.C. 433, 434-435 (1986), affd. 851 F.2d 1492 (D.C. Cir. 1988).

case, the taxpayer's accountant had communicated regularly with the Commissioner's Appeals Office, and his attorney had communicated with the Commissioner's counsel on all matters.

In Phillips, we also found that the Commissioner's insistence on pursuing the matter through litigation and her refusal to consider the impact of two prior revenue rulings on her litigating position demonstrated that any discussion of the relevant issue that the taxpayer attempted was futile. In support of our conclusion, we relied upon the report of the House Ways and Means Committee, which recognized that under circumstances indicating an unwillingness on the part of the Commissioner to compromise, the standard of exhaustion of administrative remedies should be applied less strictly. Id. at 533; see also H. Rept. 97-404, supra at 13.

In contrast, the dispositive issue in petitioner's case has always been the same: whether petitioner signed the returns in issue or tacitly consented to their filing. In addition, we do not find evidence of intransigence by respondent as we did in Phillips. In the instant case, petitioner failed to allege that she had not filed joint returns until shortly before trial. After concluding that petitioner had not signed the returns in issue, respondent was confronted with the fact that petitioner had filed joint returns with Mr. Burke for years prior and subsequent to the years in issue and had alleged in her pleadings that the returns for the years in issue were joint returns. Had

petitioner and her representatives originally come forward at the administrative Appeals conference, offered in May 1992, with the relevant facts to demonstrate that she had not filed joint returns for the years in issue, we have every reason to believe that her case could have been resolved without the need for this litigation.[16]

We hold that petitioner did not exhaust her administrative remedies, since she failed to request an Appeals office conference which was offered by respondent in the 30-day letter. Kenlin Indus., Inc. v. United States, 927 F.2d 782, 788 (4th Cir. 1991); see also Minahan v. Commissioner, 88 T.C. 492, 508 (1987). Therefore, petitioner is not entitled to an award of reasonable litigation costs.  As a result of our disposition, we express no opinion as to whether any of the remaining requirements of section 7430 have been satisfied.

An appropriate order

will be issued.

---

[16]Even an Appeals conference regarding petitioner's initial position that she was an innocent spouse would have had to explore the issues of whether the 1985, 1986, and 1987 returns were joint returns, petitioner's involvement in their preparation, and her involvement in and knowledge of the underlying transactions.